SIMON ABELES v. SAMUEL COCHRAN, *et al.*

BANK; *Purchase of Stock; Ultra Vires; Liability of Directors.* A., the holder of stock in a bank incorporated under the laws of the state, made an attempted sale of his stock to the bank. The transaction was had with the directors, but the purchase was in the name of and for the bank. The directors had no power to make such a purchase, and the bank subsequently repudiated the transaction. In an action against the directors, *held*, that there being no misrepresentation on their part, no wrong by them in act, statement or omission, and their want of power a matter of law as open to the knowledge of plaintiff as of themselves, they were not personally responsible.

*Error from Atchison District Court.*

ACTION brought by *Abeles*, against *Cochran* and four other defendants, charging both a special contract with them for the sale of one thousand shares of the capital stock of the German Savings Bank, of Leavenworth, August 23, 1873, and on all of which shares there had been paid at that date by plaintiff to said bank the sum of twenty dollars on each share thereof, and also in assumpsit for $23,300, the alleged value of said shares of stock by the plaintiff sold to the defendants, and at their instance delivered to the bank at the

time aforesaid. Defendants answered, setting up that the transaction was a sale to the bank, and that they only acted as directors thereof in the transaction, and that such sale was *ultra vires*, and denying their authority to make such contract. The reply reiterates the contract, and sets forth in detail how the transaction was accomplished, and the inducement therefor on the part of the defendants. The pleadings admit that the bank was a corporation under the laws of the state of Kansas, and that plaintiff was the owner at such time of 1,000 shares of its capital stock, and that at said time the stock was in fact transferred on his part by *blank* assignments made upon the certificates therefor, and delivered to *some one*, and thereafter retained in the vaults of the bank; and that plaintiff received in fact certificates of deposit in such bank for the consideration agreed upon for such stock, and that thereafter the bank repudiated the transaction, and sued to recover from plaintiff the value of such deposit. It is also admitted in defendants' answer that they were at said time the directors of the bank. Trial by a jury, at the November Term, 1877, of the district court, and judgment given for the defendants upon a demurrer by them interposed to the plaintiff's evidence. New trial denied, and *Abeles* brings the case to this court for review.

*W. W. Guthrie*, and *Lucien Baker*, for plaintiff in error:

It must be conceded that the negotiation concerning the plaintiff's shares of stock in the bank was with the defendants, and that the delivery thereof was to them. There was, in fact, a sale of said stock negotiated, and the assignment and the delivery thereof were made to the defendants. As the title to bank-stock certificates is changed by the assignment and delivery thereof, then when the persons by whom such sale was negotiated became the holders by delivery of such certificates, duly assigned in blank, they necessarily became the owners thereof, and of course by transfer from the assignor thereof, and are bound for the payment of the then value thereof, if not the contract price. If right on this

proposition, then the only disputable fact in this case, is the value of such stock, August 23, 1873, which must be held upon the evidence to be the price then fixed thereon by plaintiff and defendants, and shown by other evidence to be the then current market price of such stock.

That such bank corporation had no authority to buy such stock is shown by the case of *Savings Bank v. Wulfekuhler*, 19 Kas. 60. See, also, Gen. Stat., ch. 23, § 26; 42 Md. 581.

That plaintiff is not prejudiced against recovery, is held in *Tracy v. Talmage*, 14 N. Y. 162, 182–192, citing cases which establish the principle beyond question, that although the bank did not have the right to buy plaintiff's stock, the plaintiff did have the right to sell such stock, and that his attempted sale to the bank is not an illegal transaction which prevents his suing to recover against the persons negotiating such sale, and through whose hands the benefits of his stock in fact passed.

While such contract was in law *executory* as to the said bank, it was *executed* as to the plaintiff, and the persons with whom he dealt, in fact received his stock and enjoyed the benefits therefrom. (12 Am. Law Reg. 143–146, and cases cited; 45 Mo. 212; 7 N. Y. 328.) It is needless here to argue, that these 1,000 shares of stock having been transferred *in blank*, the holders thereof could fill up the same and obtain the full benefit thereof; and that therefore defendants, holding such stock in that condition, and controlling the same until it had become valueless, are bound for its value as much as if the contract in fact had been intended to be with them alone.

The principle for which we contend is fully asserted in *Weckler v. Bank*, 42 Md. 593–597, above cited. The case of *Coleman v. Coal Oil Co.*, 51 Pa. St. 74, holds that the acts of corporate officers outside of their authority are the acts of such officers as individuals. To the same effect are *Kimmel v. Stoner*, 18 Pa. St. 155, and *Reese v. Bank*, 31 id. 78. See also, 1 Denio, 472–481; 2 Ala. 719–725; 8 Wend. 495; 8

Vt. 98; 14 id. 195–202; 1 Am. Leading Cases, 610; and the case of *Tracy v. Talmage*, 14 N. Y. 187, deciding that to hold otherwise would enable persons to obtain benefits from contracts and then be allowed to successfully refuse payment therefor. See also, 1 Am. Leading Cases, 636, note *a;* 2 Bailey, 163; 7 Wend. 315, 319.

The evidence shows conclusively that the transfer of this stock was a transaction in fact between the plaintiff and the defendants, and was so intended to be; and in such a case, the right of the plaintiff to recover is beyond question.

*A. S. Everest*, and *Clough & Wheat*, for defendants in error :

The district court was required, when considering the demurrer to the evidence, to decide on the basis that Abeles sold the $100,000 of stock by him claimed to the bank, and not to the defendants in his Atchison county suit, as individuals, or to them at all, but only that they acted as directors, officers and agents of the bank in that purchase. In this connection, with reference to the acts of the officers of the bank, see 29 N. Y. 610; 1 Wall. 234; 19 Ind. 213. That the directors acted in the usual manner of such officers when acting for a bank, shows it was a corporate transaction rather than one on behalf of the officers as individuals. And further, it is very clear that Abeles, because of his previous official position, being a stockholder, &c., having been president and director, as well as from the circumstances of the case, knew, at least had notice, that even if he were selling to the defendants in the Atchison suit, he and they were engaged in an illegal transaction; and therefore he cannot recover. ( 52 Pa. St. 206; 16 Eng. Law and Eq. 180.)

Abeles, as he says in his petition, transferred and delivered his stock to the bank, and received its certificates of deposit and credits on the books thereof; and thereby, no matter to whom he really sold it, he made a full and complete contract, including an agreement as to who should pay him, and how he should be paid. The express agreement shown by the writing signed by Abeles, and by the certificates of deposit and

the implied agreement in relation to the credits given him on the books of the bank, was clear, plain and definite, and cannot be contradicted by oral evidence, so as to show the contract was otherwise than as shown. ( 20 Kas. 230; 14 Wall. 579; 9 Cow. 747.)

Where a party makes an express contract, such as Abeles made in this case, the law will not imply a different one, nor permit him to waive such contract and sue on a different one; and as the agreement was that the bank should pay him, he cannot do away with that express contract and sue on another or implied one, or against other parties. Chitty on Cont. 23, note b; id. 24, notes a and 2; 28 Ill. 383; 16 Peters, 319; 4 Mass. 448; 5 M. & W. 83; 9 B. & C. 59; 1 Doug. (Mich.) 330; 4 East, 85, 52; 2 T. R. 104–5; 6 T. R. 320; 7 T. R. 381, 568; 2 M. & S. 316; 8 B. & C. 326; 10 B. & C. 438; 3 Campb. 353; 45 Miss. 66; 20 Kas. 230; 12 Kas. 186, 539.

Because Abeles cannot abandon an express contract and raise another, either by implication or otherwise, to recover on against other parties — that is, because he cannot abandon the express contract under which the bank was to pay, and between himself and the court make a new contract and promise on the part of the defendants to pay him — said demurrer should have been sustained.

A person who deals with the servants or officers of a corporation, whose powers are fixed or limited by public acts or general law, must be presumed to know the·extent of their power, so far as limited by such acts and laws, and cannot set up that he was deceived by any representations or raise and rely on implied warranties of power in the corporation or authority in the agent, servant, or officer. (18 B. Mon. 411; 21 Wis. 197; 2 L. R. Eq. Cases, 750; 7 L. R. Ch. App. 800; 22 Conn. 384; 10 Cush. 395; 40 How. Pr. 341; 4 Brews. 308; 42 Md. 582.) And further, as a matter of law, Abeles knew such defect of authority as matter of law, and therefore cannot hold defendants. (Cases last above cited, and 1 Metc., Ky., 81.) And when from the law and facts each party can know, one as well as the other, the authority, the agent

is not liable. (1 Lans. 381; 22 Conn. 384; 10 M. & W. 1; 52 Pa. St. 206.)

Plaintiff in error cannot hold the defendants in error, because if they had been by the bank specially authorized to make the pretended purchase of the stock, he could not have held the bank liable because of the rules of law shown by the cases heretofore cited. See, also, 83 E. C. L. R. 618; 18 A. & E. N. S. (Q. B.) 618; 52 N. Y. 494; 53 id. 467; 42 Md. 582; 16 Eng. Law and Eq. 180; S. C. 83 Eng. Com. Law, 618; S. C. 18 Ad. & E. (N. S.) 618; 30 Eng. Law and Eq. 137; S. C. 82 Eng. Com. Law, 396; S. C. 4 El. & Bl. 397.

The opinion of the court was delivered by

BREWER, J.: Prior to August 23, 1873, plaintiff was the owner of a large amount of stock in the German Savings Bank, of Leavenworth. On that day, he made a sale of it, and delivered the certificates thereof assigned in blank. The questions in this case are: To whom was such sale made? and, Are the defendants liable as purchasers or otherwise for the price of this stock? The district court sustained a demurrer to the evidence, and from this ruling the plaintiff brings error. The defendants were directors of the bank, and their claim is that the sale was made by plaintiff to the bank; and that whether that sale was a valid contract on the part of the bank or not, no personal liability was assumed by them. The plaintiff, on the other hand, contends that the sale was made to the defendants personally; and also that if made to the bank, that as such a purchase of its own stock without the consent of the stockholders was *ultra vires*, the directors who made the contract were bound, and not the bank. In other words, he insists that they in fact bought for themselves; and that if they attempted to buy for the bank, as the bank could not buy, they bound themselves instead of it. Involved in this are two questions—one of fact, and the other of law. What, as a matter of fact, was the contract?

Between what parties was it attempted to be executed, and what responsibilities did the defendants assume thereby?

Upon the first question there is little room to doubt. The transaction, as understood and intended by the parties at the time, was a sale to the bank. While the plaintiff in his direct testimony does not say so in so many words, yet he does not assert the contrary; and a paper is offered in evidence, signed by him, in which he recites the sale to the bank; and there is also offered the record of a suit brought by the bank to set aside certificates of deposit issued for this stock, in which suit the bank obtained judgment. It were idle to say that, at the time, the parties did not understand and intend a transaction between the bank and Mr. Abeles.

We pass, therefore, to the second question. The parties who represented the bank, and made the purchase for it, were the defendants. They were its directors; yet as directors they had no power to bind the bank by a purchase of its stock, and the attempted sale was a nullity, and the bank properly recovered in an action to set aside the certificates of deposit issued on such attempted purchase. Now the contention is, that inasmuch as the defendants attempted to bind the bank and failed, they therefore bound themselves; that the case comes within the rule, that an agent who acts without authority, binds himself, and not his principal. This rule, however, is not of universal application. There are exceptions to it, and this case comes within one of those exceptions. It will be noticed that the failure of the directors to bind the bank arose from a lack of power in them as directors, and not from any failure to pass the proper resolution as a board, or to take any other prerequisite step. The law under which the corporation was organized gives no such power to directors. (*German Savings Bank v. Wulfekuhler*, 19 Kas. 60.) It is something the directors may not do. They cannot create the power. Their acts or omissions in no manner affect the question of its existence. And this want of power, growing out of the law, is a matter of law as open to the knowledge of the plaintiff as of the defendants. Further, there is no

pretense of any false representations made by defendants, or of any concealment of facts — nothing to show any willful wrong on their part. Both parties, in fact, supposed the power existed in the directors to make the purchase, contracted upon that basis, and contracted in good faith. The power did not exist, and the bank repudiated the purchase. And the defendants can be held only upon the bare proposition, that because the principal was not bound, the agent must be. But this does not necessarily follow. It is familiar law, that where there is an express contract the law will not imply one. In other words, when parties have definitely put their intentions into the shape of an express agreement, the law accepts that agreement as the measure of their respective rights, and will not attempt to infer the existence of some other agreement which the parties ought to have made. Here the contract as made was in the name of the bank, and for the bank. That was the express agreement. Will the law imply another? Will not the contract actually made determine the rights of the respective parties?

Where there is no wrong imputable to the agent, no action will be against him: not on the contract, for the contract was not his, nor for any wrong of act or omission, for he is guilty of none.

In *Ogden v. Raymond,* 22 Conn. 384, in which, as here, was an attempt to hold an agent on a contract made for and in the name of his principal, the court says:

"If the form of the contract is such that the agent personally covenants, and then adds his representative character, which he does not in truth sustain, his covenant remains personal and in force, and binds him as an individual. But if the form of the contract is otherwise, and the language when fairly interpreted does not contain a personal undertaking or promise, he is not personally liable; for it is not *his* contract, and the law will not force it upon him. He may be liable, it is true, for tortious conduct, if he has knowingly or carelessly assumed to bind another without authority; or when making the contract has concealed the true state of his authority, and falsely led others to repose in his authority; but,

as we have said, he is not of course liable on the contract itself, nor in any form of action whatever."

In *Aspinwall v. Torrance*, 1 Lans. 381, we find this language in the opinion: "In no case that I have been referred to, has the agent been held liable as the principal where the extent of the agency was as well known to the one party as the other."

In *Smout v. Ilbery*, 10 M. & W. 1, the facts were, that in the absence of her husband, and with his authority, the wife had been in the habit of purchasing meat from the plaintiff. The husband died while on his journey, and the wife, ignorant of the fact, continued her purchases in like manner. It was held that no action could be maintained against her upon these last purchases. The court says:

"On examination of the authorities, we are satisfied that all the cases in which the agent has been held personally responsible, will be found to arrange themselves under one or other of these three classes. In all of them it will be found that he has either been guilty of some fraud, has made some statement which he knew to be false, or has stated as true what he did not know to be true, omitting at the same time to give such information to the other contracting party as would enable him equally with himself to judge as to the authority under which he proposed to act."

And again:

"If, then, the true principle derivable from these cases is, that there must be some wrong or omission of right on the part of the agent in order to make him personally liable on a contract made in the name of his principal, it will follow that the agent is not responsible in such a case as the present."

In *Sandford v. McArthur*, 18 B. Mon. 411, it appeared that the directors of a bank ordered the issue of notes in excess of the authority given by the law of the bank's incorporation, and they were held not personally liable, and that a person dealing with the bank was bound to take knowledge of the powers granted by law to its agents. See also, Story on Agency, § 265; *McCurdy v. Rogers*, 21 Wis. 197; *Rashdall v. Ford*, 2 L. R. (Eq. Cases) 750; *Beattie v. Lord Ebury*, 7 L. R. (Ch. Appeals) 777.

The doctrine of these last two cases is, that a misrepresentation as to a matter of law is not such a one as will cast a personal liability on the agent, and that on the ground that each party is bound to know the law.

It is unnecessary to pursue this examination of authorities further. The doctrine is clear, that where the contract is made in the name of the principal, and without any personal covenant on the part of the agent, and without any wrong on his part, either in act, statement or omission, the latter is not responsible, even though the former be not bound.

The judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J., not sitting, having been of counsel in the court below.