HOLT and another *v.* WINFIELD BANK.

SAME *v.* McMULLEN.

(*Circuit Court, D. Kansas.* December 16, 1885.)

1. CORPORATIONS—ACTS ULTRA VIRES—EXECUTED CONTRACTS.
   Where a corporation goes outside of the scope of its legitimate business and makes a contract, and that contract has been executed and the corporation has received the benefits thereof, it will be enforced.

2. SAME—CONTRACTS WITHIN SCOPE OF BUSINESS.
   Where the contract is within the general scope of the business of corporations of the character, though beyond the powers actually vested in the particular corporation contracting, parties who make the contract in ignorance of the peculiar limitations in the special corporate powers of this individual corporation are not prejudiced thereby.

3. SAME—INJURY TO INNOCENT PARTIES.
   Wherever a contract has been entered into which is beyond the powers of the corporation, and other parties have acted upon the faith of that contract and parted with money or value, and the relations of the parties have become so changed that the *status ante* the contract cannot be restored, the contract will be enforced.

4. BANKING CORPORATION—SUBSCRIPTION TO A CREAMERY—WITHDRAWAL.
   Where a banking corporation, through its president, subscribed to a creamery, but before any act was done or expenditures made on the faith of such subscription the subscription was withdrawn, *held,* that it was simply an executory contract, and that the subscription could at the time be withdrawn, and that the bank was not liable.

5. PRINCIPAL AND AGENT—CONTRACT FOR PRINCIPAL BY AGENT—LIABILITY OF AGENT.
   Where an agent, without fraud or misrepresentation, at the request of the principal makes a contract for such principal and in his name, which is not binding on the principal because *ultra vires,* the facts being fully known to all parties, the agent is not liable on such contract.

At Law.

*G. W. Beebe* and *Rossington & Smith*, for plaintiff.

*J. J. Buck* and *C. F. McMillen*, for defendant.

BREWER, J. These two cases are tried together. The first case presents this question: The Winfield Bank, by its president, subscribed a thousand dollars towards the building of a creamery in Winfield. I think it immaterial to state the form in which the plan was to be carried out. The sum and substance of it was that the bank, by its president, subscribed a thousand dollars towards the building of a creamery; and the question is whether the bank is bound by that subscription.

Counsel for plaintiff have with great diligence found and submitted to me some 25 or 30 cases involving the question of the responsibility of a corporation for contracts which are not within the line of its corporate business. It may be considered as settled law to-day that where a corporation goes outside the scope of its legitimate business and makes a contract, and that contract is executed and the corporation has received the benefits of the contract, the courts will never listen to a plea of *ultra vires*. It also, I think, may be laid down as within the limits of many decisions and good law that where the contract is within the general scope of the business of corporations of that character, though beyond the powers actually vested in the particular contracting corporation, parties who make the contract, in ignorance of the peculiar limitations in the special corporate powers of this individual corporation, are not prejudiced by them. It may also be laid down as a third proposition that wherever a contract has been entered into which is beyond the powers of the corporation, and other parties have acted upon the faith of that contract and parted with money or value, and the relations of parties have become so changed that the *status ante* the contract cannot be restored, the courts will not listen to a plea of *ultra vires;* but with these limitations, and possibly some others, which, however, are not germane to this case or which do not now occur to me, the doctrine is still true that a corporation created with certain defined powers cannot go outside of those powers and make a contract to bind. A corporation created for banking purposes cannot go into the insurance business; and while the contract remains executory no contract of insurance can be enforced against it. And this is no technical, artificial, arbitrary rule. It is founded in the protection necessary to stockholders who invest their means in the corporation. They may be willing to trust their means in a certain class of business, and if the corporation is created for that class of business they have a right to rely upon the fact that it will not engage in any other business. No question of estoppel rises in this case upon the stockholders by reason of their personal action. This subscription was signed by the president with the assent of a majority of the directors. The answer, not put in issue, alleges that the party who obtained this subscription, who was the active agent

of the plaintiffs in this suit, had authority from them to consent to any modifications, limitations, or conditions in the subscription; and it further alleges that this subscription was made by the Winfield bank upon certain unfulfilled conditions, and that when it was apparent, and that, too, immediately after the signing of the contract, that these conditions were not to be complied with, the president of the bank notified this agent that the bank's subscription was canceled, null, and void.

Counsel say that this is an executed contract. I do not understand that a contract for the doing of work can be called an executed contract before the consideration is paid or the work done. It is true that this was a subscription by a number of parties, and upon the faith of that subscription the plaintiffs acted; but as to each one of the subscribers it was an executory contract until the consideration was paid, or until the work was done by the plaintiffs. And, according to the testimony, immediately after the subscription, prior to any active proceedings, the bank, subscribing by its president, notified the authorized agent of the plaintiffs that the subscription was canceled. I cannot look upon it as otherwise than a mere executory contract, and as such it is clearly without the scope of the powers of the bank. Starting a creamery is not bank business. I have before me in Omaha, Nebraska, a case which illustrates the wisdom and necessity of keeping corporations within the proper limits of their power. There the parties started with a creamery; a creamery association was incorporated. That was too humble a business for the promoters. The corporation bought a bank and went into the banking business; rented a manufacturing company's property and went into manufacturing; started a broker's office and went into the loan business. As a consequence, and as might be expected, there was a terrible crash, and a host of hungry creditors are claiming relief.

As much as I object to saying to any party that he can get out of his promise, I think that the promise of the bank in this case was beyond its powers and not binding upon it. Judgment will have to go for defendant.

The other case is one against the president of the bank, and as to which I have no question. After the suit was commenced against the bank, and it had set up this plea of *ultra vires*, the plaintiffs sued the president, claiming that if the bank was not liable he was; that he was the agent who signed that subscription, and if the principal was not liable the agent was.

I had occasion when I was on the supreme bench, in the case of *Abeles* v. *Cochran*, 22 Kan. 405, to examine with great care the circumstances under which an agent is responsible when the principal is not bound. There were in this case no misrepresentations of fact or of law made by the president. He simply told the parties he would subscribe for the bank if a majority of the directors assented. He saw

a majority of the directors and they assented; he then came back and subscribed in the bank's name. There were no false representations of facts, no representations of law. Every person who deals with corporations is chargeable with notice of the general scope of their powers. If he deals with an insurance company he knows that it is insurance business that that company is authorized to transact. So if he deals with a bank he knows that it is banking business that that bank is authorized to transact, and none other. He has the same general knowledge that the officers of the bank have. Of course, where there is a concealment of a fact within the special knowledge of the party making the representation or making the signature, he may be bound. If, for instance, the bank had power to make such a contract as this, provided the directors assented, and defendant had represented to the plaintiffs that the directors had assented when in fact they had not, then unquestionably a failure to hold the bank liable would cast a liability upon him; but when a man deals with an officer of a corporation, and no representations are made by that officer, and that officer simply proposes to bind the corporation, and as a matter of fact the corporation is not bound, and is not bound simply because the contract is *ultra vires* of that corporation, the individual making the subscription is also not bound.

Judgment may be entered for the defendant in the second case.