CASE 25—ACTION TO RECOVER DOUBLE THE AMOUNT OF USURIOUS IN-
    TEREST ALLEGED TO HAVE BEEN PAID TO DEFENDANT—JUNE 7.

# Citizens Nat. Bank of Danville v. Forman's Assignee.

APPEAL FROM BOYLE CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

ABATEMENT—PLEADING—PENDENCY OF PRIOR ACTION—NATIONAL
    BANKS—PENALTY FOR TAKING USURY—ACCRUAL OF CAUSE OF AC-
    TION.

Held: 1. Where a pleading filed by defendant called a "special de-
    murrer in the nature of a plea in abatement," was, on defend-
    ant's motion, submitted "as a demurrer," defendant can not
    complain that the court treated it as a demurrer, and not as
    a part of the answer.
2. Where it was ordered that such a pleading be taken as a part
    of the answer, it became a part thereof as of the date on which
    the order was made, and not as of the date of the filing of the
    answer.
3. The dismissal of a suit, the pendency of which has been pleaded
    in abatement of another suit is a sufficient response to the plea,

Citizens Nat. Bank of Danville v. Forman's Assignee.

though the order of dismissal was not made until after the plea was filed.

4. The discounting by a national bank of a note at a usurious rate of interest is merely the "charging" or "reserving" of usury, and not the "taking" or "receiving" of usury; and the debtor's right of action under the revised statutes of the United States, section 5198, to recover twice the amount of usurious interest paid, does not accrue when the note is discounted.

5 Where a national bank contracts for interest at a usurious rate, it at once forfeits all interest, and unappropriated payments subsequently made by the debtor must be first applied to the principal, so that while any part of the principal remains unpaid there is no payment of usurious interest, and no right to recover the penalty for taking usury accrues, unless payments made by the debtor are specifically applied by him to usurious interest.

JUDGES GUFFY, BURNAM AND HOBSON, DISSENTING.

ROBERT T. QUISENBERRY, ATTORNEY FOR APPELLANT.

(No brief in the record.)

R. T. JACOB, R. J. BRECKINRIDGE AND C. R. McDOWELL, FOR APPELLEE.

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

This was an action brought by appellee, as assignee for the benefit of the creditors of W. M. Forman, under section 5198 of the Revised Statutes of the United States, to recover of appellant bank double the amount of certain payments claimed to have been made of usurious interest by Forman to the bank upon a loan by the bank to Forman of $3,117.84 on January 29, 1895. A pleading called a "special demurrer in the nature of a plea in abatement" was filed in the clerk's office at the same time with an answer. The filing of these pleadings was afterwards entered of record by order of the court, and an order made reciting that the appellant "submitted to the court for its judgment its pleading filed herein, and denominated a 'special demurrer,' and which pleading was submitted to the court as a demurrer; and on consideration of same

the court overruled said demurrer," with an exception. The order recites that it was "made by the court prior to the making of the order heretofore entered on this day in the action of the Citizens' National Bank, etc. v. W. M. Forman, etc., in which order defendant dismisses the first paragraph of his answer in that said action; and it is ordered that this said foregoing order herein be, and the same is, noted as of record prior to the order in the action of the Citizens' National Bank, etc. v. W. M. Forman, etc., mentioned herein." It is now insisted that, inasmuch as the pleading was not a demurrer at all, but a verified plea in abatement setting up the pendency of a counterclaim by Forman in a suit by the bank, with the consent of his assignee, for the same cause of action set up in the petition, the court should not have treated it as a demurrer, but as a part of the answer. By a subsequent order it was provided that this pleading should be considered as the first paragraph of the answer, and the answer theretofore filed should be considered as the second paragraph; and it is insisted that the court erred in not treating it as a valid answer in abatement, upon the submission above mentioned, and that, if this is not so, the order that it should be taken as the first paragraph of the answer makes it take effect as a paragraph of the answer as of the date of the answer's filing, and not of the date of the order—the effort of the argument being to have this pleading considered as an answer in abatement prior to the dismissal of the counterclaim. There is no prejudicial error in all this. Appellant can not complain of his own action in submitting this pleading as a demurrer. It was clearly not sustainable as a demurrer. When it was ordered to be taken as a part of the answer, it became a part thereof as of the date on which the order was made, and not as of a prior date. Nor does it make

any special difference to appellant whether it was filed as an answer in abatement before or after the dismissal of the counterclaim, as that dismissal would have been a sufficient response to it, even though the action was taken subsequent to the filing of the plea.

In Wilson v. Millikin 19 R., 1346 44, S. W., 660; 42 L. R. A., 449), in an opinion by Judge White, this court said: "The more modern rule seems to be that the objection of a former suit pending is removed by its dismissal or discontinuance, even after plea in abatement in the second suit. We think this the more just and reasonable rule, and so hold to be the law."

The answer in the case of Bank v. Forman is copied in the record. The order dismissing the first paragraph, which is the counterclaim, is embodied in the bill of exceptions. The dismissal of the counterclaim is pleaded in the reply, and is not sufficiently denied by the rejoinder. The denial is not a denial of the dismissal of the counterclaim, but an argumentative denial that the counterclaim was dismissed before the first paragraph of the answer was filed in the clerk's office; i. e. before the paper which afterwards became the first paragraph was filed. As before said, it makes no difference whether it was dismissed before or after. The dismissal removes the objection.

It appears that on January 29, 1895, Forman executed his note for $3,250, payable to the order of J. M. Farris six months after date, and negotiable and payable at appellant bank. Farris was the president of the bank, and in this matter was acting for the bank, using the bank's money. He indorsed the note to the bank, and $3,117.84 was placed to his credit, for which sum Farris gave Forman his check, and that amount was placed to Forman's

credit. Considerable argument is devoted by appellant to the question of whether the note was discounted at the bank. It may be conceded that it was. We are unable to see that the question whether the note was discounted cuts any particular figure in determining the questions involved.

The Revised Statutes of the United States provide:

"Sec. 5197. Any association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, territory or district where the bank is located, and no more, except that where, by the laws of any State, a different rate is limited for banks of issue organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this title. When no rate is fixed by the laws of the State or territory or district, the bank may take receive, reserve or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill or other evidence of debt is to run. . . .

"Sec. 5198. The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association, taking or receiving the same, provided such action is commenced within

two years from the time the usurious transaction occurred. . . ."

The first question is whether the discounting of the note, and the deduction from its face of 8 per cent. for six months, was a payment by Forman on January 29, 1895, of that amount of interest to the bank. On behalf of the bank it is earnestly insisted that it was a payment. As matter of course, there was no physical payment of money by Forman to the bank. What he did was to execute and deliver his note for $3,250 to the order of Farris, and to receive or have placed to his credit the sum of $3,117.84. If this constitutes an actual payment by him of interest, as such, at 8 per cent., in advance, he was entitled to bring suit the next day for twice the amount of interest thus paid, and consequently his right of action was barred when he brought the suit on September 3, 1897. On the other hand, if, as contended by appellee, the transaction was a loan of $3,117.84, for which a note was then executed for $3,250, it follows that interest at 8 per cent. was carried in the note at least until September 4, 1895, when, according to the bank's calculation, the amount of the note was $3,273.85, $23.85 of which was interest on the $3,250 at 8 per cent. from August 1st to September 4th. Under the statute, we are unable to conclude that the original transaction was a payment of interest to the bank, or a payment at all. Upon the bank books it is treated as a loan of $3,250, or a discount of a $3,250 note, upon which the books show a profit placed to the credit of the discount account of $132.16. The statute makes no distinction between a reservation of interest by way of discount and the accomplishment of the same thing by any other mode. The bank could not lawfully reserve a greater rate by way of discount deducted

in advance than it could as interest at the end of the
loan period. And when we consider the distinction recog-
nized by the statute between reserving and charging inter-
est, on the one side, and actually paying interest, on the
other, it becomes plain that there was in the initial trans-
action no actual payment of interest to the bank; for
there was then no payment to the bank of anything. In-
terest was reserved and charged on the loan, or "dis-
count," in the language of the statute, but was not "taken
or received." Nor does this construction conflict with
that part of the statute which authorizes interest to "be
taken in advance, reckoning the days for which the note,
bill or other evidence of debt is to run." That language
would apply to a case where, upon a renewal of a note for
the face of an existing debt, the debtor paid in cash or
by check, in advance, the amount of the discount upon the
renewal. What was done in the original transaction was
this: Forman gave the bank his note for $3,250, and that
was all he gave the bank. He received from the bank
$3,117.84, and he kept it all. Harvey v. Insurance Co.,
60 Vt., 209 (14 Atl., 7). Moreover, to hold that discount-
ing a note for $3,250, and giving credit to the maker for
$3,117.84, was an actual payment to the bank of $132.16,
would give the maker or his assignee the right immedi-
ately to bring an action for twice the amount of the usuri-
ous interest, when in fact nothing had been paid to the
bank at all. And until the interest at the usurious rate
was actually paid, as such, the bank had the right to elect
to remit it, and it could not then be said that usurious in-
terest was paid on it. Brown v. Bank, 169 U. S., 420 (18
Sup. Ct., 390, 42 L. Ed., 801); McBroom v. Investment Co.,
153 U. S., 328 (14 Sup. Ct., 852, 38 L. Ed., 129); Stevens
v. Lincoln, 7 Metc. (Mass.), 528; Saunders v. Lambert, 7

Gray, 486; Stedman v. Bland, 26 N. C., 299. The law will not construe that to be a payment of illegal interest which is not in fact such payment, in order to subject the lender to the penalty denounced for the illegal receiving of interest, when he is guilty of an illegal bargain only, and has subjected himself only to the forfeiture imposed by law for that violation.

There was no payment of interest on January 29, 1895. On September 4, 1895, the bank claimed there was due it $3,273.85, being the face of the note, with interest thereon from maturity at 8 per cent. Forman on that day paid the bank $800. We may assume it was intended as a payment on the note. The bank credited it to his account. He executed a new note for $2,500, which was discounted, and the proceeds, $2,431.66, placed to the credit of his account; and the amount of the original note, according to the bank's calculation, was charged to his account. Was this a payment of interest upon Forman's debt? Clearly, it was not specifically so appropriated by him. It seems equally clear that no part of it was appropriated by the bank, specifically, to the payment of interest at the usurious rate.

For appellee it is claimed that it was appropriated, or must by the law be appropriated first to the extinguishment of the interest on the note, at the 8 per cent. rate, and was then a payment of interest at an illegal rate, from which a right of action then accrued for twice the amount of the interest thus paid, which was not barred by the two-years' limitation provided in section 5198, Rev. St. U. S., when this suit was brought one day less than two years thereafter. For the bank it is insisted that if the interest was not paid in advance, as claimed by it, it has never been paid, and that as the petition does not allege

that the final renewal note has ever been paid in full, but in so far as it shows anything, shows there was still a large amount unpaid at the time this suit was brought, the whole interest must be considered as still carried in the note—so far, at least, as the $800 payment is concerned. The statute forbids the taking, receiving, reserving or charging a rate of interest greater than that allowed by section 5197. When the statute is knowingly violated, the violation is deemed a forfeiture of the entire interest which the obligation carries with it, or which has been agreed to be paid thereon. In case a greater rate has been actually paid, the person by whom it has been paid may recover a penalty of double the amount of interest so paid. The construction which the language of the section naturally bears, and which has been given it by the supreme court and numerous other courts, is that it provides for two contingencies: First, when the usurious rate is reserved or charged, the whole agreement to pay any interest is void; second, if the usurious rate is actually paid, double the amount so paid may be recovered within two years by the debtor.

Said Mr. Justice Harlan, in the case of Brown v. Bank, supra: "The last section [5198] clearly makes a difference between interest which a note, bill or other evidence of debt held by a national bank 'carries with it or which has been agreed to be paid thereon,' and interest which has been 'paid.' Interest included in a renewal note or evidenced by a separate note does not thereby cease to be interest, within the meaning of section 5198, and become principal. If a bank which violates that section sues upon the note, bill or other evidence of debt held by it, the debtor may insist that the entire interest, legal and usurious, included in his written obligation, and

agreed to be paid, but which has not been actually paid, shall be either credited on the note or eliminated from it, and judgment given only for the original principal debt, with interest at the legal rate from the commencement of the suit.' And again: "The forfeiture declared by the statute is not waived or avoided by giving a separate note for the interest, or by giving a renewal note in which is included the usurious interest. No matter how many renewals may have been made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied on, and the matter is thus brought to the attention of the court, lose the entire interest which the note carries or which has been agreed to be paid.    By no other construction of the statute can effect be given to the clause forfeiting the entire interest which the note, bill, or other evidence of debt carries, or which was agreed to be paid, but which has not been actually paid.    .    .    .    Sometimes interest is said to have been paid when it is evident that it was only included in a renewal note.    But that, as we have said, was not payment, within the meaning of the statute."

There being no appropriation of any part of this payment by the debtor to the payment of interest, as such, the law will not presume an application of it to an illegal and void obligation; nor will it permit the creditor to make such an application.    So the principle of law which applies such unappropriated payments to first discharge the interest due, and then reduce the principal, can not operate in this case for all interest upon the note was forfeited, *eo instanti*, by the agreement to pay interest at the illegal rate, and payments will not be applied by operation of law to the discharge of unlawful obligations in preference to

debts justly due. The great weight of authority, including the rulings of the Supreme Court, is to this effect, and this is in full accord with the rulings in this State upon similar transactions where other than National banks are concerned. Unapplied payments are applied first to the extinguishment of interest, and then to reduce the principal. If a part of the interest is usurious, but, although it was contracted for at an illegal rate, legal interest is still recoverable, the payment is applied first to the extinguishment of so much of the interest as is legal, and then to the principal; the usury being retained in the debt to the last, no matter how many renewals are made. Kendall v. Crouch, 88 Ky. 202 (10 R., 993) (11 S. W., 587); Smith v. Robinson, 10 Allen, 132; Hawkins v. Welch, 8 Mo. 492; Hall v. Bank, 30 Neb., 102, (46 N. W., 150); Jackson v. Garner, 79 Ga. 415 (7 S. E., 213). So where, as in this case, the nature of the contract is such that the collection of all interest is prohibited, because contracted for at an illegal rate, a payment without direction by the payor as to its application must be applied first to the payment of that part of the debt which is legal, and to the illegal part only in the event of there being nothing else to which it can be applied. In the Supreme Court decisions it seems to be recognized that usurious interest may be paid, as such, without the discharge of the entire obligation, including principal and interest, and that if so paid, a cause of action will then arise for the penalty imposed for the actual taking of interest at the illegal rate. For example, in the Marion National Bank Case, supra, it is said: "If at any time the obligee actually pays usurious interest as such, the usurious transaction must be held to have then ,and not before, occurred, and he must sue within two years thereafter."

Upon the proposition that, in the absence of a specific

application by the debtor, the law will not apply, and the creditor has no right to apply, payments to an unlawful purpose to the discharge of usurious interest, which was forfeited by the statute the instant it was agreed on, the authorities are numerous.     In McBroom v. Investment Co., 153 U. S., 328, (14 Sup. Ct. 852), (38 L. Ed. 729), the question arose under the statute of New Mexico, by which the collection of interest at a higher rate than 12 per cent. was made a misdemeanor, and a right of action given to the debtor to collect double the amount so paid within three years after the cause of action accrued.     Interest notes were given upon a loan of $65,000, and a commission of ten per cent. upon the entire loan was paid to the creditor at the time of the transaction.     After the first interest note was paid, the debtor brought suit to recover double the amount of the commission.     In this case it will be observed that the statute does not make the contract for the entire interest void, but that the contract for excessive interest is rendered void by the contract for a higher rate being made a misdemeanor.     Said the supreme court:     "The contract of loan not being void, except as to the excess of interest stipulated to be paid, the question arises whether the lender is liable to an action for the penalty prescribed by the statute, so long as the principal debt, with legal interest thereon, after deducting all payments, is unpaid.     We are of opinion that this question must be answered in the negative.     While under the statute, the mere charging of usurious interest may be a misdemeanor for which the lender can be fined, whether such usurious interest is or is not collected or received, the borrower has no cause for action until usurious interest has been actually collected or received from him.     Such is the mandate of the statute.     And interest can not be said

to have been collected or received, in excess of what may
lawfully be collected and received, until the lender has in
fact, after giving credit for all payments, collected or re-
ceived more than the sum loaned, with legal interest." In
Duncan v. Bank, Fed. Cas. No. 4,135, in the district court
of the United States for the Western district of Pennsyl-
vania, it was said: "From the origin of the loan,—from
the retaining of the first discount through all the renewals
up to the time of final payment of the principal or up to the
time of entering judgment,—there is a *locus penitentiae* for
the party taking excessive interest. Any time till then
he may consider the excessive interest paid on account
of the loan, and so apply it, and lessen the principal. . .
.   Up to that time he may make this election. When
payment is actually made or judgment entered, the election
is made; and if, as in these cases, judgment is entered for
the face amount of the notes or full amount of the loan,
or payment is taken in full without any reduction by taking
out the excessive interest, the cause of action is complete."
Thomp. Nat. Bank Cas., 360, 362. In Stevens v. Lincoln, 7
Metc. (Mass.) 528, the court said ". . . that while the
usurious interest is unpaid there remains the *locus peni-
tentiae*; that the party may relinquish it, and recover for
the balance of his debt, the contract not being rendered
void by the statute. And, in the absence of proof as to
any appropriation of any partial payment, the law will
apply a payment to the valid demand rather than to the
illegal one; and the balance which remains unpaid, if it
exceeds the usury agreed to be paid, includes the usury;
so that, on one side, the debtor shall not recover back any
part of that which he honestly owed, by the allegation on
his part that the payment made by him was the payment
of the usury; nor, on the other hand, will the law permit
the creditor to secure to himself the avails of his illegal

contract, and, when he sues for the balance due on the contract, to aver that the usurious interest was contained in the previous payment, and that the residue is justly due." See, also, Saunders v. Lambert, 7 Gray, 486. So, in Harvey v. Insurance Co., 60 Vt., 211 (14 Atl., 7), it was said: "All the payments made by her, as well as those made by the plaintiff, up to the final payment, were, in law, to be applied towards the liquidation of the legal portion of the note." And in Wright v. Laing, 3 Barn. & C., 169, an action to recover penalties for usury, the court said: "If the law ought now to make such an appropriation as the pleader has supposed in this count, the count will be sustained by the proof, otherwise not. We think the law ought now to make such an appropriation. . . . And such an appropriation works no prejudice to the party. It leaves him only where, by his own conduct he placed him-self. And in the case I have put, of the payment of one bill and the nonpayment of the other, if an action for the penalties of the statute should be brought, the same principle of law would protect the defendant, by applying the payment of the first bill to the legal demand, and not permitting the then plaintiff to apply it to the illegal demand, —that is to the loan and interest, although it be precisely of the same amount,—because, peradventure, the lender might repent the illegal bargain, and refuse to receive the full amount of the second bill, and the law will allow him the opportunity of doing so, that he might not be deemed a receiver of usurious interest, without clear evidence that he had not only bargained to receive, but had actually received, such interest. And if the law will make this appropriation of the payment in the two cases that I have put,—in the one instance against the lender, and to prevent him from enforcing an illegal bargain, and in the other

instance in favor of the lender, and to protect him from being subject to a penalty for an illegal bargain only,—it seems very plainly to follow that a similar appropriation ought to be made by law in the case before the court. . . . And this, in effect, is only saying that where a person has two demands, one recognized by law, the other arising on a matter forbidden by law, and an unappropriated payment is made to him, the law will afterwards appropriate it to the demand which it acknowledges, and not to the demand which it prohibits." It has been frequently held that: "Payments may be applied by a creditor to demands not recoverable at law, when no statute prohibits the contract, but simply denies a remedy to enforce them. In such cases the contract is not illegal, and the money, if voluntarily paid, can not be recovered back. But the right does not extend to contracts which are 'prohibited by law, under heavy penal forfeitures and payments which may at once be recovered back, because illegal.' So held where a payment had been applied to a grossly-usurious contract, which could not have been enforced, and the law gave the debtor a right to recover back three times the amount paid for usurious interest." Marye v. Strouse, 6 Sawy., 204, (5 Fed., 493), citing Rohan v. Hanson, 11 Cush., 44. In Stout v. Bank, 69 Tex., 384 (8 S. W., 808), it was held that when partial payment is made to a national bank, under a contract to pay usurious interest, in the absence of a stipulation as to how the payment shall be appropriated the law will apply it to that part of the contract which is legal. And in Stanley v. Westrop, 16 Tex., 206, it was said that "the law will not make the application, nor authorize the creditor to make it, without the consent of the debtor to the payment of usury." Burrows v. Prettyman, 17 Iowa, 436. In Bank v. Slemmons, 34 Ohio St., 142, (32

Am. Rep., 366), it was said:     "Where interest at a rate exceeding that allowed by law is retained or stipulated for, the contract is, under the laws of this State invalid only as to the excess, while under the thirtieth section of the national banking act 'the statute operates on the instrument given for the loan, and, in effect, declares it to be invalid as to the entire interest, but valid and binding as an obligation for the payment of the principal.' Bank v. Garlinghouse, 22 Ohio St., 492, 502, (10 Am. Rep., 751); Shunk v. Bank, 22 Ohio St., 508 (10 Am. Rep., 762); Hade v. McVay, 31 Ohio St. 231."     The conclusion we have reached is in full accord with the reasoning of the opinion by Judge Paynter in Bank v. Thompson, 101 Ky., 277 (19 Ky. L. R., 436), (40 S. W., 903). It is true that in that case the interest was on several occasions added in the renewal notes, but the court found as a fact, that the interest was subsequently actually paid.     It was said by the court that "it appears that the interest thus added in the note was paid at dates subsequent to the time the interest was added in the note. At one time $620 was paid.     At another time a note for $316.25 was given for the interest which had been embraced in the note."

A careful examination of the evidence in this case shows that none of the payments were appropriated by the debtor to the discharge of the interest.     It follows, therefore, that the trial court erred in adjudging a recovery of double the amount claimed by the bank to be due at the time of such payments.     The note was not discharged at the date when this suit was brought, and no payment of interest at the usurious rate had then been made.     The remedy of the debtor was by the application of the payments made in reduction of the principal of the final renewal note.     For the reasons given, the judgment is reversed, with directions to dismiss the petition.     Whole court sitting.

Dissenting opinion of Judge Hobson in which Judges. Guffy and Burnam concur:

The majority opinion is rested upon the case of Mc-Broom v. Investment Co., 153 U. S., 318 (14 Sup. Ct., 852; 38 L. Ed., 729), which was based upon a statute of New Mexico materially different from the national banking act quoted. The majority opinion does not refer to the fact that in several cases the United States Supreme Court had previously announced the opposite rule under the national banking act, and that at the conclusion of the McBroom opinion these previous decisions are expressly referred to, and held' not applicable to that case. Thus, in Barnet v. Bank, 98 U. S., 555 (25 L. Ed., 212), the defendant was sued upon a bill of exchange for $4,000, dated November 18, 1873. In defense of the suit it was averred, first, that he became indebted to the bank on April 8, 1866, and from that time until the bill sued on was made, the indebtedness was never less than $4,000; that the bank had taken $5,000 in excess of the legal rate of interest; that for evasion the bills were arranged in series, and from time to time were renewed, the proceeds of the new bills being applied in payment of the prior ones; that all of the bills had been paid but the one in suit, and that nothing was due to the bank. A demurrer was sustained to this answer, and judgment entered for the full amount of the bill.

The court, after quoting the statute, said: "Two categories are thus defined, and the consequences denounced: (1) Where illegal interest has been knowingly stipulated for, but not paid, there only the sum lent, without interest, can be recovered. (2) Where such illegal interest has been paid, then twice the amount so paid can be recovered, in a penal action of debt, or suit in the nature of

such action, against the offending bank, brought by the persons paying the same, or their legal representatives. The statutes of Ohio and Indiana upon the subject of usury may be laid out of view. They can not affect the case. Where the statute creates a new right or offense, and provides a specific remedy or punishment, they alone apply. Such provisions are exclusive. Bank v. Dearing, 91 U. S., 29 (23 L. Ed., 196). In the first defense the payment of usurious interest is distinctly averred, and it is sought to apply it by way of offset or payment to the bill of exchange in suit. In our analysis of the statute, we have seen that this could not be done. Nothing more need be said upon the subject."

In Driesbach v. Bank, 104 U. S., 52 (26 L. Ed., 658), the notes sued on were the last of a series of renewals which had been regularly discounted by the bank, interest being paid on all of them at the rate of eight or ten per cent. The defendant sought credit on the note for usury. The defense was held bad on the authority of the above case. In Stephens v. Bank, 111 U. S., 197 (4 Sup. Ct., 336, 337; 28 L. Ed., 399), the facts and the plea were substantially the same, and the answer was again held bad. The court, referring to the previous decision, said: "The ground of that decision was that as, without the statute, there could be no recovery from the bank for usurious interest actually paid, and as the statute which created the right to such a recovery also prescribed the remedy, that remedy was exclusive of all others for the enforcement of that right. . . . The forfeiture and the remedy are creatures of the same statute, and must stand or fall together." These cases are not only distinguished in the McBroom case, but are again referred to in Brown v. Bank, 169 U. S., 416 (18 Sup. Ct., 390; 42 L. Ed., 801).

What are the facts of this case, to which these principles are to be applied? On January 29, 1895, Forman borrowed of the bank $3,117.84, and executed his note to it, due in six months, for $3,250; the interest on the loan for six months, at 8 per cent., being included in the face of the note. When this note fell due it was not paid, and on September 4, 1895, the note, with its accrued interest, amounting to $3,273.85, as figured up by the bank, was charged to Forman's account. He did not wish, or was not able, to pay the entire debt at that time, by $2,431.66, so a note was drawn, due in four months, the interest for the time being included in the face of the note, making the amount of the note $2,500. In this transaction Forman plainly paid all of his debt of $3,273.85, then claimed by the bank, except $2,431.66, for which the new note was given. It is well known that banks collect interest in advance. This is the uniform way of doing the business. and, without clear proof to the contrary, it must be presumed that the parties in this transaction conformed to the universal mode of doing business. If Forman had walked into the bank on September 4th and said, "I can not pay you all of my note, but will pay the interest and all of the principal, except $2,431.66, and for that will execute a new note," the effect of the transaction would have been just the same; for what is tacitly understood need never be expressed in words, and, where men by their conduct unmistakably say a thing, it is unnecessary that they should also go through the idle form of saying it in words. The interest that was included in the original note was charged, but not paid, when that note was given. It was paid, however, when that note was discharged and taken up, and a new note for a smaller amount executed. For, as expressly held by the supreme court in the three

cases above referred to, the new note was not infected by the usury in the previous transaction. The new note was usurious only to the extent of the current interest at 8 per cent. up to maturity which was included in it, and a right of action then existed to recover for the usury that day paid on the old note. The $2,500 note ran until January 29, 1896, $500 having been credited on it on January 7th. On January 29th the remainder of the debt was paid by charging it to the account of Forman as before, and the execution of a new note, the principal of which was $1,918.67, and interest up to maturity, $81.33, making $2,000. This note was not paid at maturity, and ran until September 24, 1896, when, with its accrued interest since maturity, it amounted to $2,026.22. Forman then made to the bank a note for $2,000, the principal of which was $1,958.67, and interest up to maturity, $41.33. How the court can say that no interest was paid in this transaction is hard to comprehend. A note was due, which, with its accrued interest, amounted to over $2,000, and a new note was given for $2,000, which bore no interest until its maturity. What had become of the balance of the debt? The bank had not lost it. The amount had been charged to Forman's account. It represented the interest on this money, and, if this was not a payment of interest, how can one ever be shown, unless the debtor puts the money in an envelope and indorses it, "This money is paid on interest as such?" The principal of the debt on January 29, 1896, was $1,918.67. After the payment of September 26, 1896, was made, the balance of the debt was $1,958.67; and if this money was not paid on interest, or was not interest collected by the bank, what did it represent? An act of Congress should not be so dealt with

as to make it a vain thing, and deny it fair or reasonable effect. The purpose of the statute was not to protect national banks in the exaction of usury, but to deter them from charging more than legal interest. There is no remedy except by action under the statute, and this action, by its express terms, must be brought "within two years from the time the usurious transaction occurred." Each usurious transaction is distinct, and must stand or fall alone. The purpose in limiting the action to two years from the time of each separate transaction complained of is to secure a speedy settlement of such matters while the facts are fresh or capable of proof, and to enable the banks to know their liabilities, so that they may intelligently declare dividends and carry on their other business. Whether usurious interest has been paid in any transaction is simply a question of fact, to be determined, like other similar questions of fact, according to the real intention of the parties as shown by the evidence. The court is not to follow an abstract principle, and shut its eyes to the facts, when, under the evidence, there can be no difference of opinion as to what the parties actually intended, among men of common intelligence acquainted with the business. Where there was a debt of $1,918, and, after some months, without a new consideration, the debt was $1,958, can any one doubt that the $40 thus added to the debt was unpaid interest? And, it further appearing that $68 was also paid in cash, is it not just as apparent that this $68 was paid as interest? In other words, can there be any doubt, as a matter of business, that part of the interest charged was added to the debt, and that the remainder was collected in money? If Forman had at each renewal paid just the interest for the time, and no more, would it be held that the action could not be main-

tained?   And what difference does it make that at two renewals he paid more, and at one less, than the interest charged?   The intention of the parties is equally as plain in one case as in the other.   A bank has no legitimate income, except the interest it earns.   On this it lives.   Out of it the expenses of the business and the dividends to its stockholders are paid.   Such charges are not paid out of its capital.   This is kept at interest for future earnings. In Smith v. Young, 74 Ky., 393, this court held that money paid as usurious interest on the renewal of a note would not be applied afterwards in reduction of the debt, but the only remedy was an action to recover it within the time allowed by the statute.   But in subsequent cases this was overruled, and it is now settled under the State statute that all payments as long as the debt remains will be applied on it.   Hill v. Cornwall, 95 Ky., 512 (16 R., 97), (26 S. W., 540).   But this rule can not be applied under the Federal statute.   It allows no *locus penitentiae*.   Under it, as soon as usury is in truth paid, a cause of action arises for the recovery of twice the amount so paid, and no subsequent change of mind by the bank can defeat the liability which has become absolute.     In Bank v. Thompson, 101 Ky., 277 (19 R., 436) (40 S. W., 903), this court followed the decisions of the United States supreme court above referred to, and gave judgment for the full amount of a renewal note, notwithstanding usurious interest had been collected on the original note by the bank.   The court below followed that decision, and I am of opinion that his judgment is correct, and should be affirmed.   I therefore dissent from the majority opinion.

Judges Guffy and Burnam concur in this dissent.