CASE 78—THREE ACTIONS HEARD TOGETHER INVOLVING THE LIABILITY OF THE VARIOUS PARTIES ON CERTAIN NOTES INCLUDING USURIOUS INTEREST AND QUESTIONS OF EVIDENCE, &C.—FEB. 3.

# Alexander v. First National Bank of Harrodsburg, &c.
## Same v. Same.
# Same v. Mercer Nat. Bank of Harrodsburg.

APPEAL FROM MERCER CIRCUIT COURT.

FROM THE JUDGMENTS EDGAR ALEXANDER INDIVIDUALLY AND AS ADMINISTRATOR OF ARTIE ALEXANDER APPEALS. REVERSED AS TO THE FIRST NATIONAL BANK AND AFFIRMED AS TO THE MERCER NATIONAL BANK.

USURY—EVIDENCE—STATEMENT OF DECEDENT—RENEWAL NOTES.

Held:    1. Where plaintiffs suing on notes are entitled at a certain term of court to judgment by default, or that the issues be made up by answer, payment of a stipulated sum, which was six per cent. interest on the principal, to secure time for preparing the defense, is not a payment of usury.

2. Though a note bears interest at a usurious rate, yet a payment made, being less than legal interest for the time covered on the debt, does not contain usury.

3. In a suit against a bank by E. for a penalty for receiving usury from him it is not competent for the bank's president to testify that a deceased person told him half the payments were furnished by her.

4. Testimony of a bank's president, in an action against it by E. for a penalty for receiving usury from him, that a deceased person told him she furnished half the payments, even if competent, is insufficient to overcome the testimony of E. that he actually paid the interest at the rate of eight per cent., and the admission of the president that he received such sum, and that it was paid as interest.

5. Where, a year after death of T., who had given a note to a bank with E. and A. sureties on it, it appeared that his estate was insolvent, and capable of paying only seventy per cent. of his debts, if real estate of his be sold at a certain price, and it was agreed by all that E. should buy the real estate, and the bank should loan him enough to pay seventy per cent. of T.'s indebt-

Alexander v. First National Bank of Harrodsburg, &c.

edness, and the additional thirty per cent. of his indebtedness to it, and this was done, and E. and A. gave this note to it for the loan, such note was not a renewal of the first note, so as to allow usury in the first note to be taken advantage of in an action on the second note.

GAITHER & VANARSDALL, FOR APPELLANTS.

Appellants complain of the judgment herein:

1. Because of the dismissal of the petition against First National Bank.

2. Because it does not adjudge a recovery for double the amount of all of his claims against the Mercer National Bank.

3. Because it treats the transaction of April 23, 1895, as a novation.

4. Because it renders the estate of Artie Wilson liable for the debts.

5. Because it directs a sale of the land to satisfy the judgments rendered against appellant, Edgar Alexander, &c.

6. Because it allows interest on appellee's debts from the date of filing their petition and cross-petition.

(1) Our contention is that the forfeiture as to the First National Bank should extend to the note for $6,728.09 dated September 13, 1893, due in ninety days, and that judgment should have been rendered for this sum, only leaving out the sum of $3,024.74 of accumulated usurious interest by renewals.

(2) The Mercer National Bank note was calculated upon an amount which contained over $500 of usurious interest, and under the statute authorizing such recovery we think Alexander was entitled to judgment for double the amount represented in this claim.

(3) It is contended that the interest paid October 26, 1898, even if usurious was paid in consideration of a continuance of a suit and therefore can not be recovered. We contend that the agreement shows that these sums were paid as interest upon the debts of plaintiff and defendant, Mercer National Bank, and that the calculation though at six per cent. was made upon amounts containing about $4,000 usury and that the transaction was therefore usurious.

(4) The judgment against Artie Alexander's administrator is erroneous because there is no affidavit supporting the claim of either bank as required by law.

We think the facts in this case show conclusively that the transactions of April 23, 1895, were all made in view of a settlement of T. F. Alexander's estate and that the obligations

Alexander v. First National Bank of Harrodsburg, &c.

assumed by Edgar and his sister constituted a mere continuance of an obligation already existing and should not be treated as a novation.

### AUTHORITIES CITED.

Taul v. Sears, 11 Ky. Law Rep., 366; Stucky, assignee, v. Brown & Co., 11 Ky. Law Rep., 404; Worthly v. Hammond, 13 Bush, 510; Hill v. Cornwall, 16 Ky. Law Rep., 106; Rudd v. Anderson, 12 Ky. Law Rep., 489; Snyder v. Mt. Sterling Bank, 15 Ky. Law Rep., 4; Usher's Exr. v. Flood, 12 Ky. Law Rep., 721.

T. H. HARDIN, ATTORNEY FOR FIRST NATIONAL BANK OF HARRODSBURG.

We claim that the record shows that the loan as made to Edgar Alexander and Artie Alexander by the First National Bank on April 23, 1895, of $8,502,20, and note that day given for $8,847.94 due in six months after date, was a new, independent and separate transaction; that Edgar Alexander can not go back of that date for usury against the bank; that by law Artie Alexander as administrator of T. F. Alexander can not renew a note; that when a note is assigned without recourse in law or equity, that is the end of it.

2. That Edgar Alexander can not be relied on as a witness.

3. That the payment of the $438.97 made by Ed. Alexander on October 25, 1898, was for time and indulgence.

4. He who seeks equity must do equity. Edgar Alexander obtained more in the lower court than he was entitled to. He has had the use of T. F. Alexander's 220 acres, Artie Alexander's eighty acres and his own 200 acres since April, 1895, and we ask that the judgment be affirmed.

### AUTHORITIES CITED.

On questions of novation or new note on 23 April, 1895. See Morse v. Wilcox, 17 Law Rep., pp. 19 and 30.

2. On weight of testimony, see Humphrey & Co. v. Brown's Administrator, Law Rep., vol. 23, No. 1, pp. 26 and 27.

3. On questions as to time, interest should commence, see Second National Bank of Richmond v. Fitzpatrick, Law Rep., vol. 23, No. 7, p. 610, also, Citizen's National Bank of Danville v. Forman's Assignee, Law Rep., 22, vol. 23, No. 7, p. 613.

4. On questions of affidavit and demand as to Artie Alexander, deceased. See Cockrill & Co. v. Mize, 11 Law Rep., p. 637; Gay v. Marshall, 12 Law Rep., p. 103; Huffman v. Moore's Administrator, 19 Law Rep., p. 461; Tipton v. Richardson, 21 Law Reporter, p. 1195.

W. LAWSON SIMRALL, FOR APPELLEE, MERCER NATIONAL BANK OF HARRODSBURG, KY.

## PROPOSITIONS AND AUTHORITIES.

1. A national bank that charges usury in violation of U. S. Rev. St. section 5198, forfeits the entire interest the note carries with it, but in an action on the note, the bank is entitled to recover the original principal debt with interest from the commencement of the suit. Brown v. Marion National Bank, 169 U. S., 416; Second National Bank v. Fitzpatrick, 23 R.

2. As such forfeiture extends only to the interest that an existing note (which embraces every note of which the note in suit is proximately or ultimately a renewal) carries with it, or which has been agreed to be paid thereon, it does not extend to such interest as may have been carried with, or agreed to be paid on, a note already cancelled, or extinguished, as

(a) By payment. U. S. Rev. Stat., secs. 5197, 5198; Story on Prom. Notes, 2d ed., sec. 372; Brown v. Marion National Bank, 92 Ky., 607; Hendrick v. Lindsay, 93 U. S., 143.

(b) By novation. 2 Bouv. Law Dict., "Novation, 241; Story on Prom. Notes, 2d ed., secs. 438 and 63; 16 A. & E. Ency. L. 1st ed., 862 and 876 and note; 11 A. & Eng. Ency. L., 2d ed., 914 and note, 932 and 973; Studebaker Mfg. Co. v. Montgomery, 74 Mo., 101; Hoagland v. Farmers' and Mechanics' Bank, 7 Fed. Rep., 159; Hyde v. Booraem, 16 Peters, 167 at p. 178; Smith v. Young, 11 Bush, 393; Webb on Usury, sec. 452; Lyman v. Bank U. S., 12 How. (U. S.) 239, p. 243; Spencer v. Society of Shakers, 23 R.; Culver v. Wilbern, 48 Iowa, 26; Morse v. Wilcoxson, 17 R., 29; Brown v. Marion National Bank, 92 Ky., 607 and 18 R., 186. Distinguishing. Snyder v. Mt. Sterling National Bank, 94 Ky., 231; Hill v. Cornwall, 95 Ky., 512; Rudd v. Anderson, 12 R., 489.

3. Such forfeiture will not be declared unless the party seeking it make convincing proof of every fact essential to forfeiture. Wheeler v. Union National Bank, 96 U. S., 268.

4. A doubt whether usury has been taken will be resolved in favor of the bank. Timberlake v. First National Bank, 43 Fed. Rep., 231.

5. There can be no recovery under U. S. Stat., sec. 5198 of the penalty of twice the amount of interest paid within two years unless it constitutes usury. Ruffner v. Hogg, 1 Black, U. S., 115; Brown v. Marion National Bank, 169 U. S., 416; 27 A. & E. Ency. L., 1st ed., 922 note, and 1043; Webb on Usury, sec. 416; New Jersey, &c. Co. v. Turner, 14 N. J. Eq., 326; Graeme v. Adams, 23 Grat (Va.) 225; 1 Bouv. Law Dict., p. 598; Eddy's Exr. v. Northrup, 15 R., 434.

Alexander v. First National Bank of Harrodsburg, &c.

6. It is essential to recovery of such penalty that it should affirmatively appear that usury was knowingly received by the bank.  Wheeler v. Union National Bank, 96 U. S., 268.

7. If there be a doubt whether a transaction is usurious the doubt must be resolved in favor of its validity.  Timberlake v. First National Bank, 43 Fed. Rep., 231.

8. Verification and demand of a claim against the estate of a decedent equally imperative under Kentucky Statutes, section 3872, are equally unnecessary, where an action begun against the decedent in his lifetime is, after his death revived against his personal representative. In such a case the statute does not apply   Kentucky Statutes, secs. 3870, 3872; Tipton's Admr. v. Richardson, 21 R., 1195; Huffman v. Moore's Admr., 19 R., 462.  Overruling, Worthley v. Hammond, 13 Bush, 510; Stucky, Assignee v. Brown and 11 R., 404; Taul v. Sears, 11 R., 366.

9. But even if verification and demand, or verification alone, were originally necessary, they, one and both, were waived.

(a) By failure to make the objection in the court below. Shire's Admr. v. Johnson, 18 R., 853.

(b) By completion of the issues and trial had upon the merits, without making the objection.   Gray v. Marshall, 12 R., 103; Tipton's Admr. v. Richardson, 21 R., 1195.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM, REVERSING AS TO FIRST NATIONAL BANK AND AFFIRMING AS TO MERCER NATIONAL BANK.

This appeal is from a judgment of the Mercer circuit court rendered in three cases, which were consolidated and heard together.  A summary statement of the facts out of which the litigation grew is necessary for the proper understanding of the questions of law which we are asked to decide.  On the 9th day of July, 1893, T. F. Alexander executed a note to the First National Bank of Harrodsburg for $2,-000, due on the 12th of January, 1894, which the appellants Edgar Alexander and his sister, Artie Alexander, signed as his securities.  On the 13th of September, 1893, he executed his note to the same bank, with the same securities, due on the 16th of December, 1893, for $6,728.09.  This latter note was taken up by the execution of a 30-day note by the same parties for $6,777.42, and which matured on the

19th day of January, 1894. At this latter date, T. F. Alex-
ander executed his note to the bank for $8,768.34, due seven
months after date, with his brother, Edgar Alexander, and
his sister, Artie Alexander, and James L. Bond as securi-
ties. The proceeds of this note were applied to pay off the
balance due upon the $2,000 note, dated on the 9th of July,
1893, and the $6,777.45 note, dated the 16th of December,
1893. All these various notes bore interest at the rate
of 8 per cent., and the accumulated interest was added to the
principal at the date of each renewal. On the 6th day of
April, 1894, Thomas F. Alexander executed his note to the
Mercer National Bank for $4,368.25, due six months after
date, with Artie Alexander, Edgar Alexander and James
L. Bond as his securities. The net proceeds of this note—
$4,200—was put to the credit of T. F. Alexander, a discount
of $168.25 being reserved as interest at the rate of 8 per
cent. Thomas F. Alexander died intestate on the 15th of
April, 1894, before the maturity of either of the debts to
the banks, and his sister and security, Artie Alexander,
qualified as his administratrix. It was developed after his
death that his estate was insolvent, and his heirs at law,
with a view of facilitating the settlement of his estate, and
saving his sister, Artie Alexander, from loss, so far as pos-
sible, because of the various liabilities incurred by her as
surety for her brother, sold and conveyed to her in fee all
their interest in his estate, real and personal. His realty
consisted of a tract of land in Mercer county, containing
220 acres. It was ascertained prior to the 23d of April,
1895, that, after reducing to cash all the available personal
estate of decedent and selling the 220 acres of land belonging
to T. F. Alexander for $40 per acre, his estate would pay
70 per cent. of his debts, and on that day a consultation was
had between the administratrix, Artie Alexander, and the

appellant, Edgar Alexander, and their attorney, on one side, and the officers of the First National Bank and the Mercer National Bank, their principal creditors, at which it was agreed that the appellant, Edgar Alexander, should pur- chase the 220 acres of land at $40 an acre, amounting to $8,800, and that the two banks would loan him enough money to pay 70 per cent. of the indebtedness of T. F. Alex- ander, and also a sufficient sum to pay the overplus of his indebtedness, which would fall upon Edgar Alexander and his sister, Artie. To carry out this agreement, the First National Bank loaned to Edgar Alexander on that day $8,507.36, on which interest was charged at the rate of 8 per cent., and a note was taken therefor, due six months after date, for $8,847.95, and the Mercer National Bank on the same day advanced to him $4,195.45, taking a note therefor, due six months after date, for $4,366.22, on which interest was charged at the rate of 8 per cent. Seventy per cent. of this money was paid over to Artie Alexander, administratrix, by Edgar Alexander, and was by her ap- plied to the indebtedness of T. F. Alexander. The balance of the money was used by Edgar Alexander to pay the over- plus due the respective banks by his sister and himself as securities thereon. To secure the payment of this note so executed to the banks, Edgar Alexander and his sister, Artie Alexander, executed a mortgage on several tracts of land, including that which had formerly belonged to the estate of Thomas F. Alexander. The note to the First National Bank was renewed on the 26th day of October, 1895, by Ed- gar and Artie Alexander by the execution of a new note for $9,201.82, due on the 29th of April, 1896, interest being added at the rate of 8 per cent., and was again renewed by the execution of a note for $9,569.89, due six months after

date. On the 1st of November, 1896, this note was renewed
by the execution of a note for $9,752.83, due six months
after date. On the 4th day of May, 1897, this note was re-
newed by the execution of a new note for $9,752.83, due six
months after date. At this time Edgar Alexander paid to
the bank $390.12, as interest at the rate of 8 per cent., by
his check on the Boyle National Bank, and on the 7th of
November, 1897, this note was renewed by the execution
of a new note to the bank for the same amount, due six
months after date, interest on this note at the rate of 8
per cent., being paid to the bank by the check of Edgar
Alexander on the Boyle National Bank for $390.12. On the
3d of September, 1898, the appellee, the First National Bank
of Harrodsburg, instituted this suit, asking a personal judg-
ment on the last renewal of their debt and for an enforce-
ment of the mortgage lien executed to them on the 23d of
April, 1895, jointly with the Mercer National Bank. The
Mercer National Bank was made a defendant, and on the
same day filed its answer, which was made a cross-petition
against its codefendants Artie and Edgar Alexander, in
which they set up their note dated November 9, 1897, for
$4,721, which they allege was a renewal of the note execut-
ed on the 23d of April, 1895, and ask a personal judgment
against Edgar and Artie Alexander, and joined in the
prayer for an enforcement of the mortgage. The defend-
ants were not prepared to file their answers to the petition
and cross-petition at the following October term of court,
and, in consideration of the continuance of the cause to the
next term of the court, which began in February, 1899, and
an extension of time to file their answer until the fourth day
of that term, they paid to the banks interest on the notes
sued on to February 10, 1899, at the rate of 6 per cent. The
amount paid to the First National Bank under this agree-

ment was $438.87 and to the Mercer National Bank $211.14. In January, 1899, before the expiration of the time given to the defendants to answer, Artie Alexander died, and shortly after her death the codefendant Edgar Alexander qualified as her administrator, and the action was, by consent, revived against him as administrator.

The answer of appellants to the petition of the First National Bank denies the amount of its claim, and in the second paragraph alleges that the obligation sued on carried with it a large amount of usurious interest, and they ask the forfeiture of the entire interest from the date of the first note executed by T. F. Alexander to the bank, under sections 5197, 5198, Rev. St. U. S. [U. S. Comp. St., 1901, p. 3493]. A similar answer was filed to the cross petition of the Mercer National Bank. And while this suit was pending the appellant Edgar Alexander, on the 20th of January, 1899, filed a separate suit against each of the banks, in which he sought to recover double the amount of interest paid on his indebtedness to them within two years prior to the institution of the suits. His petition against the First National covers the following alleged payments of interest on the debt sued on:

To amount paid as interest at 8 per cent., May
    25, 1897 ................................... $ 390 11
To amount paid as interest at 8 per cent., Dec.
    27, 1897................................... 390 12
To amount paid October 26, 1898.............. 438 87

    Total .................................. $1,219 10

The claim against the Mercer National Bank on this score is as follows:

To amount paid as interest May 27, 1897, at 8
    per cent.................................... $109 89

To amount paid December 24, 1897............. $190 23
To amount paid October 26, 1898.............. 211 14

     Total ................................. $517 28

The issues were made up in the three cases, and they were consolidated, and the proof taken in the consolidated actions, and final judgment rendered in all the cases in February, 1901. The suit of Edgar Alexander against the First National Bank was dismissed. In his suit against the Mercer National Bank he was given a judgment for $376.46, being double the amount paid as interest on the 24th of December, 1897. In the suit of the banks against Edgar Alexander they were given judgment for the amount loaned by them on the 23d day of April, 1895, without interest prior to the institution of their respective suits, and a decree of foreclosure directing the sale of the mortgaged lands entered. From that judgment Edgar Alexander and Edgar Alexander, administrator of Artie Alexander, deceased, have appealed.

He insists that under the proof he is entitled to a judgment against the First National Bank for $2,830.20, double the amount of interest paid within two years from the institution of his suit; also that he was not given a judgment against the Mercer National Bank for the full amount sued for. And in the case of the banks against him he complains that the judgments did not give him a credit for all the interest which accrued upon the original loans of T. F. Alexander to the banks prior to the execution of the notes by him and his sister on the 23d of April, 1895. Nearly all the questions of law involved upon this appeal have been passed upon by this court in the recent cases of Bank v. Fitzpatrick, 111 Ky., 228 (23 R., 610) 63 S. W., 459, and Bank v. Forman's Assignee, 111 Ky., 206 (23 R., 613) 63

S. W., 454, 757.  It will, therefore, only be necessary for us to apply the law as determined in these cases to the facts as developed by the proof in these consolidated actions.  We will first consider the questions involved in the suit by Alexander against the two banks to recover double the amount of interest paid.  The money paid to the banks by the appellant on October 26, 1898, can in no sense be regarded as a payment of usury.  Appellees were entitled at that term of the court to a judgment by default for their respective demands, or that the issues should be made up by answer.  To prevent this, and secure time for the preparation of their defense, appellants paid a stipulated sum, which was in fact 6 per cent. interest upon the principal of the respective debts sued on.  Courts will not permit agreements of this character, made in good faith, to become the basis of a claim for double the amount so paid as a penalty under the statute, and, in our opinion, the trial court properly refused to so treat these payments.  The $109.89 paid to the Mercer National Bank on the 27th of May, 1897, was less than interest at the rate of 6 per cent. for the time covered upon the debt, and consequently did not contain usury for which a suit can be maintained under the statute.

We will not consider the claim of appellant for double the amount of interest paid to the First National Bank.  He testifies unequivocally that on the 25th of May and 27th of December, 1897, at the dates of the renewal of his debt in the bank, he actually paid the interest thereon at the rate of 8 per cent. by checks drawn on the Boyle National Bank, and these checks are filed as exhibits with his deposition.  The president of the bank admits the receipt of these two sums of money, and that they were paid as interest; but seeks to escape liability under the statute on the ground that

Artie Alexander in her lifetime informed him that she was jointly bound for the obligation sued on with the appellant Edgar Alexander; that she furnished to Edgar Alexander one-half the money which went to make up the respective checks. It was not competent for the appellee's president to testify to oral statement made to him by Artie Alexander after her death as to what proportion of these payments were furnished by her; and, even if competent, it is not enough to outweigh the testimony on this point in favor of the appellant. We are, therefore, of the opinion that the appellant, Alexander, was entitled to a judgment in his suit against the First National Bank for twice the amount of these payments, which amounts to $1,560.44, and that their note against him should have been credited with this sum as of the date of the institution of the suit.

We now come to appellant's claim to have the obligations due the banks purged of all the interest which accumulated during the lifetime of T. F. Alexander on his debts to them. This contention is made upon the theory that the obligations executed on the 23d of April, 1895, by Edgar and Artie Alexander were mere renewals of the existing indebtededness of T. F. Alexander, deceased, to the banks as of that date. Appellees, on the other hand, insisted that the transaction of that date resulted in the total extinguishment of the indebtedness of T. F. Alexander, and the loan to appellant was a new transaction. The evidence of every witness who has testified as to what took place between the parties on that day, except the appellant Edgar Alexander, is to the effect that it was the intention of all parties that the indebtedness of T. F. Alexander should be paid, and his estate finally settled. He had been dead more than a year, and his creditors were importunate for the payment of their respective debts. It was made manifest that his estate was

insolvent, and that his unsecured creditors would only real-
ize 70 per cent. of their indebtedness if the estate was set-
tled out of court in the most economical way. It was,
therefore, agreed that appellant should take the land of T.
F. Alexander at $40 per acre. The personal estate had al-
ready been reduced to cash, and it was easy to determine
what the estate would pay. To save the cost of a settlement
in court, the sale to Edgar Alexander was agreed to; and
to enable him to pay for the land, and to consummate the
agreement with the creditors, the appellee banks consented
to loan him a sufficient sum of money to make the deal suc-
cessful. They surrendered as of that date their old obliga-
tion on which James L. Bond was bound as security, they
gave up all claim against the estate of T. F. Alexander,
and loan the money solely upon the credit of appellant and
his sister, with the mortgage upon their lands including
that purchased from the estate of T. F. Alexander. We
think that there can be no doubt that on the 23d of April,
1895, the administrator of T. F. Alexander could have, un-
der the federal statute, required the banks to accept the
principal of the indebtedness of T. F. Alexander in pay-
ment of their debt; and that, after payment, they might
have maintained a suit for double penalty. But, having
elected to pursue a different course, they can not at this
late day, in this transaction, be permitted to treat the obli-
gation sued on as mere renewals by the security of the debts
due the banks by T. F. Alexander. We therefore conclude
that the chancellor properly denied appellants this relief.

For reasons indicated, the judgments in the cases of Ed-
gar Alexander v. First National Bank and First National
bank v. Edgar Alexander *et al.* are reversed. The cases
of Edgar Alexander v. Mercer National Bank and the Mer-
cer National Bank v. Edgar Alexander on cross-petition

are affirmed, and the several causes remanded to the trial court for proceedings not inconsistent with this opinion.

Petition for rehearing by First National Bank of Harrodsburg overruled.