## McBROOM *v.* SCOTTISH MORTGAGE AND LAND INVESTMENT COMPANY.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 1028. Submitted January 5, 1894. — Decided March 5, 1894.

The statutes of New Mexico, Compiled Laws 1884, §§ 1736–1738, do not permit the receiving of usurious interest by way of, or under the guise of discount, commission, agency, or other subterfuge.

Those statutes make void a contract of loan providing for usurious interest only as to the interest in excess of what the statute allows.

The limitation of three years, under the statutes of New Mexico, within which the borrower may sue for double the amount of usurious interest collected and received from him does not commence to run, and consequently the right of action therefor does not accrue, until the lender has collected or received more than the original debt with interest.

THE case is stated in the opinion.

*Mr. Frank Springer*, for plaintiff in error, submitted on his brief, citing: *Fowles* v. *Equitable Trust Co.*, 141 U. S. 384; *Sherwood* v. *Roundtree*, 32 Fed. Rep. 113; *New England Mortgage Co.* v. *Gay*, 33 Fed. Rep. 636; *Loyd* v. *Williams*, 3 Wilson, 250; *S. C. sub nom. Lloyd* v. *Williams*, 2 Wm. Bl. 722; *Fisher* v. *Beasley*, Doug. 235; *Wade* v. *Wilson*, 1 East, 195; *Scurry* v. *Freeman*, 2 Bos. & Pul. 381; *Wood* v. *Grimwood*, 10 B. & C. 689; *Grow* v. *Albee*, 19 Vermont, 540; *Nelson* v. *Cooley*, 20 Vermont, 201; *Davis* v. *Converse*, 35 Vermont, 503; *Harvey* v. *National Ins. Co.*, 60 Vermont, 209; *Commonwealth* v. *Frost*, 5 Mass. 53; *Simpson* v. *Warren*, 15 Mass. 460; *Stevens* v. *Lincoln*, 7 Met. (Mass.) 525; *Smith* v. *Robinson*, 10 Allen, 130; *Bank of Peterborough* v. *Childs*, 130 Mass. 520; *Kirkpatrick* v. *Houston*, 4 W. & S. 115; *Oyster* v. *Longnecker*, 16 Penn. St. 269; *Brown* v. *Bank of Erie*, 72 Penn. St. 209; *Brown* v. *McIntosh*, 39 N. J. Law, 22; *Farmers' & Mechanics' Bank* v. *Dearing*, 91 U. S. 29; *Oates* v. *Nat. Bank*, 100 U. S. 239; *Bank of the United States* v. *Owens*, 2 Pet. 527; *Bank of the United States* v. *Waggener*, 9 Pet. 378; *Fleckner* v. *Bank of the United States*, 8 Wheat. 338.

*Mr. Andrieus A. Jones* and *Mr. Eugene A. Fiske*, for defendant, submitted on their brief, citing: *Bank of the United States* v. *Waggener*, 9 Pet. 378; *Condit* v. *Baldwin*, 21 N. Y. 222; *Call* v. *Palmer*, 116 U. S. 98; *Grant* v. *Phœnix Life Ins. Co.*, 121 U. S. 271; *Simpson* v. *Warren*, 15 Mass. 460; *Smith* v. *Robinson*, 10 Allen, 130; *Hawkins* v. *Welch*, 8 Missouri, 490; *Kendall* v. *Crouch*, 88 Kentucky, 199; *Peterborough Nat. Bank* v. *Childs*, 130 Mass. 519; *Hintermister* v. *First National Bank*, 64 N. Y. 212; *Johnson* v.

*Gloversville Bank*, 74 N. Y. 329; *Harvey* v. *National Life Ins. Co.*, 60 Vermont, 209; *Scurry* v. *Freeman*, 2 Bos. & Pul. 381; *Duncan* v. *First National Bank*, Thompson's Nat. Bank Cases, 360; *Pangborne* v. *Westlake*, 36 Iowa, 546; *Miller* v. *Ammon*, 145 U. S. 421; *Lazear* v. *National Bank*, 52 Maryland, 78; *Farmers' & Mechanics' Bank* v. *Harrison*, 57 Missouri, 503; *Stevens* v. *Lincoln*, 7 Met. (Mass.) 525.

MR. JUSTICE HARLAN delivered the opinion of the court.

The defendant in error, the Scottish Mortgage and Land Investment Company of New Mexico, Limited, is a private corporation organized under the laws of Great Britain for the purpose, among others, of lending money in this country on the security " of real or heritable or of leasehold estate," or " of cattle, sheep, or other live stock, and movable goods and chattels."

That company agreed to loan McBroom, the plaintiff in error, the sum of $65,000, payable six years after date with interest at the rate of twelve per cent per annum. As evidence of the loan he executed and delivered his principal note for the above amount and six interest notes, one for $2842.19, payable December 31, 1886, five for $7800 each, payable, respectively, December 31, 1887, 1888, 1889, 1890, 1891, and 1892, and one for $4965, payable August 20, 1892. These notes were secured by a deed of trust upon certain lands and by a chattel mortgage upon cattle, horses, and other personal property.

The amount so borrowed was paid to McBroom by the company in the latter part of September, 1886, and out of the sum received he paid to Dinkel, the company's agent in New Mexico, through whom the loan was negotiated, the sum of $6500.

McBroom's interest note for $2842.19, falling due December 31, 1886, was paid by him at its maturity. Aside from the bonus of $6500 received by the company's agent, no other payment on account of this debt has ever been made.

By the statutes of New Mexico it is provided that " in written contracts for the payment of money it shall not be legal to recover more than twelve per cent interest per an-

num;" that "any person, persons, or corporation who shall hereafter charge, collect, or receive from any person a higher rate of interest than twelve per cent per annum shall be guilty of a misdemeanor, and upon conviction thereof before the district court or a justice of the peace, shall be fined in a sum of not less than twenty-five dollars nor more than one hundred dollars; and such person, persons, or corporation shall forfeit to the person of whom such interest was collected or received, or to his executors, administrators, or assigns, double the amount so collected or received upon any action brought for the recovery of the same within three years after such cause of action accrued;" and that "the provisions of this act shall also apply to any person, persons, corporation, or officer of the same who may charge, receive, or collect a higher rate of interest than twelve per cent per annum by means of discount, commission, agency, or any other subterfuge." Act of April 3, 1884, Sess. Laws, New Mexico, 1884, c. 80; Compiled Laws of New Mexico, 1884, §§ 1736, 1737, 1738.

McBroom brought this action under the above statute to recover from the defendant in error double the amount alleged to have been collected and received by the corporation in excess of the legal rate of interest. The declaration, in one count, charges that the $6500 paid to the company's agent and the $2842.19 paid in discharge of the interest note maturing December 31, 1886, were in excess of what the company was authorized by the statute to charge, collect, or receive, and upon that basis judgment was asked for $18,660.20. At the trial the plaintiff withdrew all claim except for an amount double the sum of $6500 paid to Dinkel, the company's agent.

There was a verdict and judgment against the company for $13,000. The judgment was reversed by the Supreme Court of the Territory, and the cause was remanded with directions to proceed in accordance with the opinion of that court. Subsequently, at the request of McBroom, in order to facilitate an appeal by him to this court, the judgment was so modified that a *venire de novo* was not awarded, and upon the facts in the record, the Supreme Court of the Territory adjudged that the company go hence without day, and recover

its costs in that court as well as in the court of original juris-
diction.   The judgment of the court below, therefore, became
a final one.   30 Pac. Rep. 859.

The general grounds upon which the court below proceeded
were that the contract in question was valid to the extent of
the principal sum and the legal interest; that all payments
made by the borrower, whether such payments were made on
account of usury or as bonus or commission, should be applied
in reduction of the debt; and that the borrower was not enti-
tled to recover the statutory penalty while any portion of the
amount really loaned, with legal interest, after crediting all
payments, remained unsatisfied.

If, when receiving the bonus of $6500 from the borrower,
Dinkel, the agent of the defendant in New Mexico, repre-
sented his principal, the contract in question was usurious;
for that sum and the aggregate amount of the notes given
for interest exceeded the highest rate of interest that could
be charged, collected, or received, under the laws of New
Mexico, on the sum loaned to McBroom.   Upon this point
the court below said : " In the view that we have taken of
the matter it is immaterial to determine whether Dinkel was
an agent or whether as an officer he was a part of the corpora-
tion, so that a transaction with him was a transaction with the
corporation itself ; for the fourth article of the agreement be-
tween him and the home office, as already shown, provided
that all such commissions and bonuses should enure to the
benefit of the company.   In view of this provision of his
contract and of the fact that the company had knowledge of
each step taken by him, it is to be presumed that he was act-
ing for the company.   The facts in this case bring it clearly
within the rule laid down by the Supreme Court of the United
States in the case of *Fowler* v. *Equitable Trust Co.*, 141 U. S.
384, where a foreign corporation (whose agent in the State
accepted a commission from the borrower on loans procured
from such foreign corporation) was held to have received the
proceeds of the usurious transaction, the commission paid to
the agent being in excess of the highest rate of interest
allowed by law."   We entirely concur in these views.   The

statute of New Mexico does not permit the receiving of usurious interest, by way of, or under the guise of, " discount, commission, agency, or any other subterfuge."

Was the contract between the parties void as to the amount loaned with legal interest thereon, because it provided for, or in its execution involved, the payment of usurious interest? The plaintiff insists that it was, and, consequently, that a cause of action accrued immediately upon the payment of the bonus of $6500 to the company's agent, or at least from the first payment of interest for a fixed period. This question must first receive attention.

Of course, effect must be given to the intention of the legislature as manifested by the words of the statute, interpreted according to their natural signification. And in ascertaining that intention, all of its provisions must be considered together. As said in *Harris* v. *Runnels*, 12 How. 79, 84: " Before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, the statute must be examined as a whole to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so. In other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, it is not to be taken for granted that the legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice." So, in *Pratt* v. *Short*, 79 N. Y. 437, 445: " A prohibitory statute may itself point out the consequences of its violation, and if, on a consideration of the whole statute, it appears that the legislature intended to define such consequences and to exclude any other penalty or forfeiture than such as is declared in the statute itself, no other will be enforced, and if an action can be maintained on the transaction of which the prohibited transaction was a part, without sanctioning the illegality, such action will be entertained." See also *Pangborn* v. *Westlake*, 36 Iowa, 546, 549, and authorities there cited.

The statute of New Mexico does not declare a contract

providing for usurious interest to be absolutely void in respect
to the amount loaned and legal interest thereon, but only
imposes a fine upon any person or corporation charging,
collecting, or receiving a higher rate of interest than twelve
per cent per annum, and forfeits to the person, from whom
such interest is collected or received, or to his executors,
administrators, or assigns, double the amount so collected or
received — the action to recover such penalty to be brought
within three years after the cause of action accrues. Con-
struing sections 1736, 1737, and 1738 together, the statute does
not prohibit the recovery of the amount loaned with legal
interest. No such consequence, as the forfeiture of the prin-
cipal and legal interest, is visited upon the lender. And that
seems to be the view expressed by the Supreme Court of the
Territory of New Mexico when, construing the local statute,
in *Milligan* v. *Cromwell*, 3 New Mexico, 330, it said: "If it
should not be legal to recover more than 12 per cent interest
per annum upon written contracts, the converse of that propo-
sition would seem to follow as a necessary consequence that it
shall be lawful to recover on such contract 12 per cent interest
per annum." It is true that, by necessary implication, the
contract is void as to any interest stipulated to be paid, in
excess of the highest rate allowed by the statute. But as the
statute only imposes a fine for charging, collecting, or receiving
usurious interest, and gives to the borrower a right to recover
double the amount of such interest collected or received from
him, the courts ought not to declare the contract void as to
principal and legal interest. That would add a penalty not
prescribed by the statute.

This question, substantially as now presented, has often
arisen in cases under the section of the national banking act,
providing that the knowingly taking, receiving, reserving, or
charging a rate of interest, in excess of that allowed by the
act, shall be adjudged a forfeiture of the entire interest, and,
in case a greater rate is paid, gives the person paying it, and
his legal representatives, a right, by suit brought within a
specified time, to recover back twice the amount so paid. In
reference to that act this court has said that "where a statute

prescribes a rate of interest and simply forbids the taking of more, and more is contracted for, the contract is good for what might lawfully be taken. . . . Where a statute creates a new offence and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes." *Farmers' & Mechanics' National Bank* v. *Dearing*, 91 U. S. 29, 35. So, in *Oates* v. *National Bank*, 100 U. S. 239, 249, where one of the questions was whether a bank could be deemed a *bona fide* holder of a negotiable note, having received it under a contract which, in its execution, involved a violation of the usury laws of the State, this court said: " The statute under which the bank was organized, known as the National Banking act, does not declare the contract under which the usurious interest is paid to be *void*. It denounces no penalty other than a forfeiture of the interest which the note or bill carries, giving to the debtor the right to sue for and recover twice the amount of interest so paid. If we should declare the contract of indorsement void, and, consequently, that no right of action passed to the bank on the note transferred as collateral security, an additional penalty would thus be added beyond those imposed by the law itself."

These decisions are in harmony with prior and subsequent decisions of this court. In *Fleckner* v. *Bank of the United States*, 8 Wheat. 338, 355, 353, where one of the questions was whether a certain discount was usurious, the court said: " The statutes of usury of the States, as well as of England, contain an express provision that usurious contracts shall be utterly void'; and without such an enactment the contract would be valid, at least in respect to persons who were strangers to the usury. The taking of interest by the bank beyond the sum authorized by the charter would doubtless be a violation of its charter, for which a remedy might be applied by the government; but as the act of Congress does not declare that it shall avoid the contract, it is not perceived how the original defendant could avail himself of this ground to defeat a recovery." Again, in the same case: " The act has not pronounced that such a violation [the dealing in notes]

makes the transaction or contract *ipso facto* void, but has punished it by a specific penalty of treble the value." So in *De Wolf* v. *Johnson*, 10 Wheat. 367, 392, in which was said: "The law of Rhode Island certainly forbids the contract of loan for a greater interest than six per cent, and so far no court would lend its aid to recover such interest. But the law goes no farther. It does not forbid the contract of loan, nor preclude the recovery of the principal under any circumstances. The sanctions of that law are the loss of the interest and a penalty to the amount of the whole interest and one-third of the principal if sued for within a year. On what principle could this court add another to the penalties declared by the law itself?"

In line with the above cases are those in which national banks have been held entitled to recover upon securities taken in the course of business, but in violation of the act of Congress. In *National Bank* v. *Matthews*, 98 U. S. 621, 627, the court said: "The statute does not declare such a security void. It is silent upon the subject. If Congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done instead of leaving the question to be settled by the uncertain result of litigation and judicial decision. Where usurious interest is contracted for, a forfeiture is prescribed and explicitly defined." *National Bank* v. *Whitney*, 103 U. S. 99, 103; *Smith* v. *Sheeley*, 12 Wall. 358, 361.

To this general class of cases belongs *Fritts* v. *Palmer*, 132 U. S. 282, 289, where the question was whether a deed for real estate in Colorado, made to a Missouri corporation organized to do business in Colorado, but which had not filed in the office of the Secretary of State of the latter State a copy of its charter of incorporation, etc., was absolutely void, passing no title to the grantee. The statutes of Colorado provided that no foreign or domestic corporation established or maintained in any way for pecuniary profit of its stockholders or members should purchase or hold real estate in that State, except as provided for in the act; that every company incorporated under the laws of any foreign state or kingdom, or of

any State or Territory of the United States, beyond the limits of Colorado, and then or thereafter doing business within that State, should file in the office of the Secretary of State a copy of its charter of incorporation; and that failure to comply with these provisions should render each and every officer, agent, and stockholder so failing therein, jointly and severally liable on any and all contracts of such company made within that State during the time that such corporation is so in default. This court said: "The constitution and laws of Colorado, it should be observed, do not prohibit foreign corporations altogether from purchasing or holding real estate within its limits. They do not declare absolutely or wholly void, as to all persons, and for every purpose, a conveyance of real estate to a foreign corporation which has not previously done what is required before it can rightfully carry on business in the State. Nor do they declare that the title to such property shall remain in the grantor, despite his conveyance. So far as we are aware, the only penalty imposed by the statutes of Colorado upon a foreign corporation carrying on business in the State before acquiring the right to do so, is found in section 262 of the same chapter. . . . The fair implication is that, in the judgment of the legislature of Colorado, this penalty was ample to effect the object of the statutes prescribing the terms upon which foreign corporations might do business in that State. It is not for the judiciary, at the instance or for the benefit of private parties, claiming under deeds executed by the person who had previously conveyed to the corporation, according to the forms prescribed for passing title to real estate, to inflict the additional and harsh penalty of forfeiting, for the benefit of such parties, the estate thus conveyed to the corporation and by it conveyed to others."

To the cases may be added the following: *Lazear* v. *Union Nat. Bank,* 52 Maryland, 78, 121, in which the court, referring to statutes regulating usury, held that a contract, under which a greater interest is taken than the law allows, is not, for that reason, void, unless the law itself provides that the taking of illegal interest shall be attended by that result; and *Farmers' & Traders' Bank* v. *Harrison,* 57 Missouri, 503,

509, in which the court, referring to the prohibitions of usury by statute, said that the measure of illegality or immorality is the extent of the prohibition, and that applies not to the *loan*, in which there is no moral vice, but only to the forbidden excess of interest.

Our conclusion upon this branch of the case is that, upon principle and authority, the contract of loan in question providing for usurious interest cannot be held void, except as to interest in excess of what the statute allowed to be charged, collected, or received.

The contract of loan not being void, except as to the excess of interest stipulated to be paid, the question arises whether the lender is liable to an action for the penalty prescribed by the statute, so long as the principal debt, with legal interest thereon, after deducting all payments, is unpaid. We are of opinion that this question must be answered in the negative. While, under the statute, the mere *charging* of usurious interest may be a misdemeanor for which the lender can be fined, whether such usurious interest is or is not collected or received, the borrower has no cause of action until usurious interest has been actually collected or received from him. Such is the mandate of the statute. And interest cannot be said to have been collected or received, in excess of what may be lawfully collected and received, until the lender has, in fact,— after giving credit for all payments,— collected or received more than the sum loaned, with legal interest. Such, in our judgment, is the true construction of the statute of New Mexico. In this view, the limitation of three years, within which the borrower may sue for double the amount of usurious interest collected and received from him, does not commence to run, and, therefore, the cause of action does not accrue, until the lender has actually collected or received more than the original debt with legal interest. These conclusions are supported by adjudged cases.

In *Duncan* v. *First Nat. Bank of Mount Pleasant*, in the District Court of the United States for the Western District of Pennsylvania, it was said : "From the origin of the loan, from the retaining of the first discount through all the re-

newals up to the time of final payment of the principal, or up to the time of entering judgment, there is a *locus penitentiæ* for the party · taking the excessive interest. Any time till then he may consider the excessive interest paid on account of the loan, and so apply it and lessen the principal. . . . Up to that time he may make this election. When payment is actually made or judgment entered, the election is made, and if, as in these cases, judgment is entered for the face amount of the notes or full amount of the loan, or payment is taken in full without any reduction by taking out the excessive interest, the cause of action is complete." Thompson's National Bank Cases, 360, 362.

In *Stevens* v. *Lincoln*, 7 Met. 525, 528, which was an action, under a statute of Massachusetts, authorizing suit to recover threefold the amount of interest paid, it being alleged that interest had been paid at a greater rate than the law allowed, the court said: "In regard to the payment of $1458.91, whether this was a payment of the usurious interest or a part of it, we are of opinion, that while the usurious interest is unpaid, there remains the *locus penitentiæ;* that the party may relinquish it, and recover for the balance of his debt — the contract not being rendered void by the statute. And in the absence of proof as to any appropriation of a partial payment, the law will apply a payment to the valid demand rather than to the illegal one ; and the balance which remains unpaid, if it exceeds the usury agreed to be paid, includes the usury ; so that, on one side, the debtor shall not recover back any part of that which he honestly owed, by the allegation, on his part, that the payment made by him was the payment of the usury ; nor, on the other hand, will the law permit the creditor to secure to himself the avails of his illegal contract, and when he sues for the balance due on the contract, to aver that the usurious interest was contained in the previous payment, and that the residue is justly due." The same rule was affirmed in *Saunders* v. *Lambert*, 7 Gray, 484, 486.

So in *Harvey* v. *National Life Ins. Co.*, 60 Vermont, 209, 211 : " As the result of that transaction the plaintiff went away with nine hundred dollars in money — all he had ever

received from the defendant as his own money, and the defendant with the plaintiff's note for $1000. . . . Hence the one hundred dollar usury entered into and became a part of the mortgage note. The payments made by the plaintiff and by Mrs. Hardaker prior to the time of taking up the note, would in law be applied towards the payment of the legal portion of the note. . . . All the payments made by her, as well as those made by the plaintiff, up to the final payment, were in law to be applied towards the liquidation of the legal portion of the note. Hence the plaintiff is entitled to recover what was paid as the final payment of the note, above what was then legally due upon the note after applying the payments made thereon in liquidation of the legal portion of the note with interest." To the same effect are the following authorities: *Kendall* v. *Crouch*, 88 Kentucky, 199, 202; *Smith* v. *Robinson*, 10 Allen, 130, 132; *Hawkins* v. *Welsh*, 8 Missouri, 490, 492; *Hall* v. *Fairfield Bank*, 30 Nebraska, 99, 102; *Jackson* v. *Garner*, 79 Georgia, 415.

In *Wright* v. *Laing*, 3 B. & C. 165, 169, which was an action to recover the penalties of the statute of usury, Abbott, C. J., said: "None of the payments were appropriated by either party at the times of payment. If the law ought now to make such an appropriation as the pleader has supposed in this count, the count will be sustained by the proof, otherwise not. We think the law ought now to make such an appropriation. . . . And such an appropriation works no prejudice to the party; it leaves him only where by his own conduct he placed himself; and in the case I have put of the payment of one bill and non-payment of the other, if an action for the penalties of the statute should be brought, the same principle of law would protect the defendant, by applying the payment of the first bill to the legal demand, and not permitting the then plaintiff to apply it to the illegal demand, that is, to the loan and interest, although it be precisely of the same amount; because, peradventure, the lender might repent the illegal bargain and refuse to receive the full amount of the second bill, and the law will allow him the opportunity of doing so, that he might not be deemed a receiver of usurious

interest, without clear evidence that he had not only bargained to receive, but had actually received, such interest. And if the law will make this appropriation of the payment in the two cases that I have put, in the one instance against the lender, and to prevent him from enforcing an illegal bargain, and in the other instance in favor of the lender, and to protect him from being subject to a penalty for an illegal *bargain only*, it seems very plainly to follow that a similar appropriation ought to be made by law in the case before the court. . . . And this, in effect, is only saying that where a person has two demands, one recognized by law, the other arising on a matter forbidden by law, and an unappropriated payment is made to him, the law will afterwards appropriate it to the demand which it acknowledges, and not to the demand which it prohibits."

For the reasons stated, we are of opinion that this action cannot now be maintained under the statute, and, consequently, the court below properly reversed the judgment of the court of original jurisdiction and entered judgment in favor of the defendant.

It is proper to say that the questions determined in *Barnet* v. *National Bank*, 98 U. S. 555; *Driesbach* v. *National Bank*, 104 U. S. 52; *Stephens* v. *Monongahela Bank*, 111 U. S. 197; and *Carter* v. *Carusi*, 112 U. S. 478, do not arise here. No question is presented in the case before us as to whether the borrower, when sued for the principal debt and legal interest, may, of right, set off the amount of any penalty prescribed by the statute of New Mexico.

*The judgment of the Supreme Court of the Territory is therefore*

*Affirmed.*