## THOMPSON et al. v. PARK SAV. BANK et al.

Nos. 6328, 6391.

United States Court of Appeals for the District of Columbia.

Argued Feb. 5, 1935.

Decided April 29, 1935.

J. Bruce Kremer, George B. Springston, Herbert M. Bingham, E. Hilton Jackson, and Wm. E. Richardson, all of Washington, D. C., for appellants.

Joseph T. Sherier and Otis Beall Kent, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case was brought in the lower court by the appellants to recover judgment against the directors of the insol-

956

vent Park Savings Bank of Washington, D. C., in behalf of the bank's depositors and other creditors.

The amended bill of complaint filed in the lower court by appellant Thompson and the cross-bill filed therein by appellant Moran, as receiver, were in part dismissed by the court for want of substance. The present appeal was taken from this order of dismissal.

Inasmuch as the ruling of the lower court was ·based solely upon the allegations of the amended bill of complaint and the cross-bill, without the introduction of any testimony, the present appeal must be considered with reference to such allegations.

It appears that the Park Savings Bank was organized as a corporation under the laws of Alabama on August 30, 1909, with power to conduct a general banking business. The Constitution . of the State of Alabama 1901, § 251, provides' as ·follows: "Every bank 'or banking company shall be required to cease ·all banking operations within twenty years from the time of its organization, unless the time be extended by law, and promptly thereafter close its business; but after it' has closed its business it shall have corporate capacity to sue 'and shall be liable to suits until its affairs and liabilities are fully closed."

The following sections of the Alabama Code of laws (1928) relate to such corporations:

"§ 6383. Any banking corporation, or any corporation engaged in doing a banking business, whether organized 'under a general law or by a special act of the legislature, or otherwise, may from time to time, at any time before the expiration of the original term of its corporate existence * * * extend its corporate existence for such additional period it may desire, not to exceed twenty years, in the manner prescribed in the· next following section."

"§ 6384. The board of directors shall pass a resolution that such extension is desirable, and shall call a meeting of the stockholders in accordance with the provisions of section 7002 [3478] of the Code to take action thereon, notice of which said meeting shall be filed with the state superintendent of banks. If the holders of the · larger amount in value of each class of stock having voting power shall vote in favor of such extension

the proceedings shall be certified by the president and the secretary or cashier under the corporate seal, and proved and acknowledged as in the case of deeds to real estate, and such certificate shall be filed with the superintendent of banks. If the proceedings and certificate are in proper form the superintendent of banks shall endorse his approval thereon, and thereupon the corporation shall file the same in the office of the probate judge of the county where such corporation has its principal place of business; and upon such filing the corporate existence of such corporation shall be deemed extended in accordance with said certificate."

"§ 7069. Corporations whose charters expire by limitation and which are dissolved by forfeiture or by any other cause, except by judicial decree, exist as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, settling their business, · disposing of .their property, and dividing their capital stock, but not for the purpose of continuing their business; and the directors shall be trustees thereof with full power to settle their affairs, collect their debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts; and may act under the by-laws of the corporation, prescribe the terms and conditions of the sales of the property of the corporation, sue for and recover the debts and property of the dissolved corporation, in the corporate name; and are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands. On application to the circuit court [chancellor or judge] or other court at the principal place of business of the corporation, such trustees may be continued for such length of time beyond such five years as may be necessary for the purpose in this section set forth."

Conformably with the foregoing provisions the certificate of incorporation of the Park Savings Bank contained the following paragraph: "Eighth. The duration of the bank shall continue for a period of 20 years from the date of its incorporation, with the privilege of extension from time to. time as provided by the laws of the State."

The Park Savings Bank, although incorporated under the laws of Alabama,

never actually transacted any banking business in that state, nor, so far as appears, did it ever own any property there. Immediately after its incorporation it established a banking house and proceeded to engage in the business of banking in the city of Washington, D. C. All of its officers and directors and substantially all of its stockholders resided in the District of Columbia; all meetings of its stockholders and directors were held in the District; and all of its corporate assets and records were continuously kept here. The bank, therefore, was governed in part by sections 298 and 299, title 5, District of Columbia Code (1929), reading in part as follows:

"298. *Banking Institutions to be under Supervision of Comptroller of Currency.* —All savings banks or savings companies, or trust companies, or other banking institutions, organized under authority of any act of Congress to do business in the District of Columbia, or organized by virtue of the laws of any of the States of this Union, and having an office or banking house located within the District of Columbia where deposits or savings are received, shall be, and are hereby, required to make to the Comptroller of the Currency and to publish all the reports which national banking associations are required to make and publish under the provisions of sections 5211, 5212, and 5213 of the Revised Statutes of the United States, and shall be subject to the same penalties for failure to make such reports as are therein provided, which penalties may be collected by suit before the Supreme Court of the District of Columbia. And the Comptroller shall have power, when in his opinion it is necessary, to take possession of any such bank or company, for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks. * * *

"299. *Comptroller may Examine into Condition of Banks.*—The Comptroller of the Currency, in addition to the powers conferred upon him by law for the examination of national banks, is hereby further authorized, whenever he may deem it useful, to cause examination to be made into the condition of any bank mentioned in the preceding section. * * *"

It thus appears that under the laws of Alabama, supra, the charter of the Park Savings Bank as a corporation entitled to do a general banking business expired on August 30, 1929. No proceedings, however, were undertaken to renew the bank's charter, nor was it ever renewed. Nevertheless the bank continued to engage in its established banking business in the District of Columbia, in the same banking house, in the same name, and with the same officers as before. The stockholders of the bank held annual meetings in the month of January in the years 1930, 1931, 1932, and 1933 and re-elected the directors who continued to act as before in the capacity of directors of the bank as a going concern. In the name of the bank the directors, among other things, declared dividends payable to the stockholders aggregating during the period subsequent to August 30, 1929, the sum of $51,000, which sum was actually paid by the bank to the stockholders. At various times during the years 1932 and 1933 the bank borrowed large sums of money from the United States Reconstruction Finance Corporation and pledged as security for the loans a part of the assets of the bank then in its hands. Moreover, reports were regularly made by the bank to the then Comptroller of the Currency in the name of and on account of the bank, and its affairs were periodically examined by the Comptroller until the 6th day of March, 1933, when it was closed by the "bank holiday" order of the President of the United States. The bank upon examination was then found to be insolvent and was not permitted to reopen for business.

On July 13, 1933, the appellant John F. Moran was appointed and qualified as receiver of the bank by the Comptroller of the Currency under the authority of section 298 of title 5 of the D. C. Code, supra. The receiver immediately took possession of all of the assets of the bank, and has since retained them in his possession and officially administered upon them.

Afterwards, to wit, on November 25, 1933, the appellant Joseph W. Thompson (together with Mary E. Allan, Harry A. Rearick, and Anna V. Livingstone, who have since withdrawn from the case), as plaintiffs, commenced the present suit in the lower court by filing a bill of complaint for a receiver, discovery, and accounting, naming as defendants the Park Savings Bank; John F. T. O'Connor, Comptroller of the Currency; the Recon-

struction Finance Corporation (since dismissed from the case); Frank E. Altemus and others "as directors and liquidating trustees of the Park Savings Bank, and as individuals trading under the firm name and style of Park Savings Bank"; and Eugene Casey and others individually and as stockholders of the Park Savings Bank.

The amended bill sets out the facts above stated relative to the organization of the bank, its failure to extend its charter according to law, and the continuance of its business after the date of the expiration of the charter at the same place and under the same name; and alleging also that the directors, notwithstanding the fact that all of the property and assets of the corporation had become vested in them as liquidating trustees under the statute, and that in such capacity they had no right to further engage in or conduct a banking business or continue any business of the corporation, did nevertheless actively conduct, operate, and manage the business as aforesaid, inducing the plaintiffs and the public generally to believe that the former Park Savings Bank, under which name they continued to conduct the business, was still continuing to exist as a banking corporation, and that they were the officers and directors of the bank, when in fact they had not taken any steps to extend or renew the charter of the former bank; that the plaintiffs and other depositors by reason thereof deposited their money with the defendant-directors, and that the individual defendants named as directors had thereby become liable and responsible as copartners to the plaintiffs and other depositors for the monies so deposited. Plaintiffs also alleged that a considerable portion of the assets of the bank have been depleted by the wrongful acts of one Stunz, one of the directors and trustees as aforesaid who had recently committed suicide, and that plaintiffs believe that a loss of approximately $2,250,000 of the bank's funds has resulted from such operations. The plaintiffs prayed that a court receiver be appointed to take over the assets and administer the same; that the defendants described as directors be held jointly and severally liable for all assets coming into their hands as liquidating trustees on August 30, 1929, and be required to account therefor for the benefit of the creditors and depositors of the bank, and also be held jointly and severally liable as copartners for the amount of all deposits made subsequent to August 30, 1929.

The defendant John F. Moran, as receiver, filed a cross-bill in the case alleging that after August 30, 1929, the bank existed only as a corporation de jure for the sole purpose of liquidation within the period of five years in accordance with the terms of the Alabama statutes, supra; that the members of the board of directors then holding office became trustees for the sole purpose of liquidating the affairs of the bank; that the directors as such trustees then came into possession of assets having a value of $4,122,789.84, and that on March 6, 1933, the aggregate liability to depositors and creditors amounted to $3,973,107.59; that thereafter the directors continued to engage in and conduct a general banking business under the name and style of Park Savings Bank, and thereby became jointly and severally liable to all depositors and creditors with whom they did a banking business subsequent to August 30, 1929, in addition to their liability to the depositors and creditors of the bank on that day; that the directors accordingly are liable to the receiver (1) for all assets which came into their hands as liquidating trustees on August 30, 1929, and (2) as for a debt to the creditors (including all depositors) with whom said directors as liquidating trustees transacted any business or became indebted in the name of the bank between the dates of August 31, 1929, and March 6, 1933. The receiver prayed for an accounting and recovery accordingly.

The directors of the bank as defendants in the case filed a motion to dismiss the amended bill of complaint as to that part charging liability of the directors for all deposits received subsequent to August 30, 1929; and to dismiss the cross-bill of the receiver as to that part charging liability of the directors as liquidating trustees for deposits received subsequent to August 30, 1929.

The court granted this motion, and accordingly dismissed in part the amended bill of plaintiffs and the cross-bill of the receiver as prayed in the motion. Whereupon the present appeal was taken.

This appeal, therefore, relates only to the alleged liability of the directors of the bank for such obligations as were incurred after August 30, 1929. No relief was sought in this case against the

stockholders. The sole question is whether the individual directors of the bank became liable for the deposits received by the bank when it continued in the operation of the banking business after August 30, 1929.

It is our opinion that the foregoing facts do not show a liability of the directors for the deposits made with the bank subsequent to August 30, 1929, and that the ruling of the lower court to this effect is correct.

We are satisfied that the provisions of section 7069 of the Alabama Code, supra, that the directors as liquidating trustees of the bank shall be "jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands," relate solely to the assets of the bank as they existed on August 30, 1929, and do not refer to the deposits made with the bank after that date. This construction is justified by the language and purpose of the act.

The pleadings do not charge that any fraud was committed by any of the directors upon the bank, nor any act of bad faith practiced toward the depositors. It is charged that the assets of the bank were "depleted" by the "wrongful acts" of one of the directors named Stunz, who afterwards committed suicide prior to the commencement of this case; and that a loss was suffered by the bank in the sum of approximately $2,250,000. It is not averred or even intimated in the pleadings that any one of the director defendants in this case was guilty of any participation in these wrongful acts. Moreover, the directors are not charged with any act of negligence in the performance of their ordinary duties as directors in the conduct of the bank. The only charge brought against them is that they failed to act as liquidating trustees of the bank under section 7069, Alabama Code, supra, but instead thereof acted as directors in continuing the business of the bank after August 30, 1929, without procuring an extension of the bank's charter.

Under the statutes of Alabama, the bank's existence as a de jure corporation was continued for the period of five years following August 30, 1929. The corporate powers of the bank, however, during this period were limited to the liquidation of its affairs, and it was expressly prohibited from continuing a general banking business during this time. The

action of the bank in continuing the banking business after August 30, 1929, was ultra vires, but this did not have the effect of dissolving the corporation, for such a dissolution in invitum could be effected only by appropriate action of the state of Alabama. So long, therefore, as Alabama took no action to dissolve the corporation, it continued to exist, notwithstanding the fact that the conduct of its business as a general banking corporation was ultra vires. Lehman, Durr & Co. v. Warner, 61 Ala. 455; Force v. Age-Herald Co., 136 Ala. 271, 33 So. 866; Snider's Sons' Co. v. Troy, 91 Ala. 224, 230, 8 So. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887; Morawetz, Private Corporations, vol. 2, § 1002, p. 963. However, whether it be said that the action of the bank in this particular was that of a de jure corporation acting ultra vires, or was that of a de facto corporation acting totally beyond any de jure powers, does not seem to be controlling in this case. In either view the bank purported to act as a corporation, and the depositors dealt with it as such. See our opinion in American Surety Company of New York v. John F. Moran, Receiver Park Savings Bank, 64 App. D. C. 127, 75 F.(2d) 646, certiorari denied, 55 S. Ct. 546, 79 L. Ed. ——.

The persons thereafter dealing with the corporation as depositors were charged with a knowledge of the terms of the corporate charter. They therefore knew, either actually or constructively, that the bank was not then authorized by its charter to proceed with a general banking business. Therefore they are estopped to deny the legality of the bank's actions and cannot hold the directors or stockholders liable individually or as partners.

In Love v. Ramsey, 139 Mich. 47, 102 N. W. 279, 280, it is said: "Under the decisions of this court the members of a corporation are not liable where it is a corporation de facto, though not de jure, and the plaintiff has dealt with it as a corporation. Before the goods in this case were sold, articles of incorporation had been duly filed in the proper offices, and the company held itself out as a legally organized corporation, and did business as such. It was in the power of the creditors dealing with it to examine these articles and ascertain the character of its organization. All are presumed to know the law, and when one

deals with a corporation knowing that it is not in fact a de jure corporation, he as well as the corporation is estopped to deny its legality, and cannot hold its manager liable individually or its stockholders liable as partners."

In Abeles v. Cochran, 22 Kan. 405, 31 Am. Rep. 194, it was held as follows: A, the holder of stock in a bank incorporated under the laws of the state, made an attempted sale of his stock to the bank. The transaction was had with the directors, but the purchase was in the name of and for the bank. The directors had no power to make such a purchase, and the bank subsequently repudiated the transaction. In an action against the directors, held that, there being no misrepresentation on their part, no wrong by them in act, statement, or omission, and their want of power a matter of law as open to the knowledge of plaintiff as of themselves, they were not personally responsible.

In Elson v. Wright, 134 Iowa, 634, 112 N. W. 105, the charter of a bank incorporated in 1879 had expired by limitation in 1899. No steps had been taken to extend its charter; but the bank had continued to do business as a corporation, under its original charter, until 1904, when a receiver was appointed. An assessment levied by the receiver against the estate of a deceased stockholder was resisted on the ground that the corporation, upon the lapse of its charter, had ceased to be a corporation. It was held, however, that the continued conduct by the bank of its corporate business had constituted it a de facto corporation, and that its stockholders, therefore, were not liable to assessment as partners but as stockholders for its debts. See, also, Gartside Coal Co. v. Maxwell (C. C.) 22 F. 197;

Ryland v. Hollinger (C. C. A.) 117 F. 216; In re Western Bank & Tr. Co. (D. C.) 163 F. 713; Bushnell v. Consolidated Ice Machine Co., 138 Ill. 67, 27 N. E. 596; Brady v. Delaware Mut. Life Ins. Co., 2 Pennewill (Del.) 237, 45 A. 345; Briggs v. Cape Cod Ship Canal Co., 137 Mass. 71; Miller v. Coal Co., 31 W. Va. 836, 8 S. E. 600, 13 Am. St. Rep. 903; Huey. v. Nat. Bank, 177 Ga. 64, 169 S. E. 491.

In Douglas County Commissioners v. Bolles, 94 U. S. 104, 105, 24 L. Ed. 46, it was said: "Whether the St. Louis, Lawrence, and Denver Railroad Company was lawfully a corporation, capable of contracting with the defendants below, is a question that cannot be raised in this case. * * * It has been a corporation de facto, at least, if not de jure, from the date of its organization. Its corporate existence, therefore, and its ability to contract cannot be called in question in a suit brought upon evidences of debt given to it."

See Tulare Irrigation District v. Shepard, 185 U. S. 1, 22 S. Ct. 531, 46 L. Ed. 773.

It has been repeatedly held that, where the provisions of the National Bank Act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States and not by private parties. Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240, 13 S. Ct. 66, 36 L. Ed. 956; McBroom v. Scottish Investment Co., 153 U. S. 318, 14 S. Ct. 852, 38 L. Ed. 729; Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218.

The decree of the lower court is affirmed.