**KNOTT v. JACKSON et al.**

**JACKSON et al. v. KNOTT.**
Nos. 7, 8.

Municipal Court of Appeals for the
District of Columbia.
Dec. 16, 1942.

Rehearing Denied Dec. 30, 1942.

Mark P. Friedlander, of Washington, D. C. (Herman Miller, of Washington, D. C., on the brief), for appellant.

Philip Wagshal, of Washington, D. C., for appellees and cross-appellants.

Before RICHARDSON, Chief Judge, and CAYTON, and HOOD, Associate Judges.

HOOD, Associate Judge.

Plaintiffs below, Walter A. Jackson, Rebecca M. Jackson, his wife, and Isabell Ware, sued the defendant, Dr. C. O. Knott, for the recovery of alleged usurious interest. The record discloses that in February, 1937, Mr. Jackson sought a loan from Dr. Knott and offered as security a third deed of trust on his home, but the loan was refused on the ground the security offered was insufficient. Later Mr. Jackson, with the consent of his aunt, Isabell Ware, again approached Dr. Knott and offered a second deed of trust on Mrs. Ware's house as additional security for the loan. Dr. Knott examined her house and approved a loan. The record does not disclose the amount of the loan originally sought nor the amount finally agreed upon but on March 10, 1937 Mr. and Mrs. Jackson and Mrs. Ware executed a joint and several note, payable to the order of Marie Toombs, in the principal amount of $980, with interest at 6% per annum, principal and interest being payable in monthly installments of $40 each. This note was secured by a single deed of trust executed by the three makers of the note and covering both the Jackson and Ware homes.

It was contended by plaintiffs, and not denied by defendant, that the payee of the note was but a straw party for Dr. Knott; and though the principal amount of the note was $980 it is conceded by all parties that the amount actually advanced by Dr. Knott was only $697.90. The latter amount was advanced by Dr. Knott in the following amounts and for the following purposes: a check for $112.50 to Mr. Sager as payment on a second trust on the property of the Jacksons, a check for $120.00 to the Bank of Commerce & Savings in payment of a debt of Mr. Jackson, a check for $37.43 to L. P. Stewart to pay a bill owed by Mr. Jackson, checks for $72.74 and $65.01 in payment of taxes on the Jacksons' property, a check for $68.06 in payment of taxes on the Ware property, a check for $209.19 in payment of a bill owing by Mrs. Ware, and the balance in cash which was handed to Mrs. Jackson. The record offers no explanation why the payments were made in the manner above stated rather than by one check to the plaintiffs, though apparently it was by agreement of all parties.

The note and deed of trust were executed in the office of Herman E. Miller, an attorney representing Dr. Knott. Dr. Knott paid him the sum of $50 on account of expenses and fees in this transaction.

Thereafter, up to and including February 8, 1939, the sum of $555.30 was paid on account of the note, $476.34 being applied to principal and $78.96 to interest. This sum was paid by Mr. Jackson and Mrs. Ware, but neither could testify as to the exact amount he or she paid, though Mrs. Ware testified that she paid more than Mr. Jackson.

On March 24, 1939, Mrs. Ware paid the sum of $300, $297.48 being applied to principal and $2.52 to interest. The record does not disclose expressly why she made this payment, how the particular sum was determined, or the negotiations or conversations leading up to the making of the payment. However, upon the making of this payment Mrs. Ware's property was released from the deed of trust given to secure the note.

Thereafter Jackson continued to make various payments upon the note until December 4, 1941, when the note was paid in full.

Obviously the transaction was usurious and the defendant below made no contention to the contrary. The jury rendered a verdict for the plaintiffs in the sum of $330.82. This sum was arrived at by adding the sum of $98.72, the interest charged on the note, and the principal amount of $980, making a total of $1,078.72, and deducting therefrom $697.90, the amount actually advanced, plus the $50 payment to Miller.

The defendant appealed from the judgment entered on that verdict and the plaintiffs have taken a cross-appeal.

The cross-appeal is based upon the refusal of the trial court to rule that the case came within the provisions of the so-called Loan Shark Law,[1] which provides that the person violating the provisions of the act shall forfeit all interest, and in addition thereto shall forfeit a sum equal to one-fourth of the principal sum. We think the trial court was correct in this ruling. The Loan Shark Law is not a usury statute, but an act licensing, under limitations and restrictions, the lending of money in small sums upon personal security;[2] and was intended to apply only to persons making small loans upon personal security as shown by the fact that the amount of such loans is limited by the act to $200.[3] The actual amount loaned in this case, nearly $700, can hardly be called a small loan and is far above the figure fixed by the act.

In an attempt to bring this case within the act, plaintiffs below offered the testimony of one Lewis, who identified four notes representing loans from Knott to the witness, in amounts varying from $30 to $93, made between November 14, 1936, and July 20, 1938. Such evidence, plus the making of the loan here in issue, is not sufficient to warrant a finding that Knott was engaged "in the business of loaning money" within the meaning of the act.[4] Plaintiff also offered in evidence other notes payable to Marie Toombs but since the witness testified that Marie Toombs lent money herself, the court properly refused to admit those notes in evidence against Knott.

The contention made in the main appeal, in substance, is that a claim for the return of usury is a personal right and that to maintain a joint action for usury there must be proof of joint payment or payment out of joint funds, that since there was no proof in this case of either joint payments or payment from joint funds the plaintiffs below could not maintain a joint action; that Mrs. Jackson, made no actual payments and therefore could not maintain a separate action; that Mr. Jackson did not prove that he paid more than he actually received and therefore could not maintain a separate action; and that Mrs. Ware was the only one who might have claimed usury but that her cause of action is barred by the one year limitation of our usury statute.

Our Code provision, § 28—2704, relating to the recovery of usury paid, provides that if a person shall take or receive unlawful interest, the person "paying the same shall be entitled to sue for and recover the amount of the unlawful interest so paid," provided said suit be begun within one year from the date of such payment.

Appellant cites a number of cases to the effect that usury can be recovered only by the party paying it. Illustrative of these cases is Kendall v. Vanderlip, 2 Mackey, D.C., 105, where an accommodation maker, when sued on the note, attempted to set off usurious interest paid by the party accommodated, whose name did not appear on the note, and the court, denying such right of set-off, said: "Now, in this case, the illegal interest was paid by Terry, for whose accommodation these notes were made, not by the maker of the notes; and it is very plain that the maker cannot maintain a suit against Kendall to recover money paid by Terry, a third party, out of his own pocket."

The case most heavily relied upon by appellant is that of Timberlake et al. v. First National Bank, 5 Cir., 43 F. 231, 235, where suit was brought to recover alleged usury, and on a demurrer to the pleas the court said: "The fifth plea alleges that T. C. King & Co. were the successors of Timberlake & Nance, and that whatever amount of interest was paid, if any, over and above the interest allowed by law, was paid by T. C. King & Co., who alone are entitled to recover the penalty therefor. Section 5198 [12 U.S.C.A. § 86] confers the right to recover the penalty to the party paying it, or to his legal representatives, so that this plea sets up a valid defense to this action if sustained by the proof."

Other cases of a similar nature are cited by appellant.[5] These cases hold that one

[1] D.C.Code 1940, §§ 26—601 to 26—611.

[2] Reagan v. District of Columbia, 41 App.D.C. 409, 412.

[3] Von Rosen v. Dean, 59 App.D.C. 359, 360, 41 F.2d 982.

[4] See Zirkle v. Daly, 60 App.D.C. 344, 54 F.2d 455.

[5] First National Bank of Concordia v. Rowley, 52 Kan. 394, 34 P. 1049; Brent's Executors v. Tivebaugh, 12 B. Mon. 87, 51 Ky. 87; Hahn v. Walker's

cannot recover usury not paid by him and consequently that one joint maker cannot recover illegal interest when it was paid by the other maker. And in some of the cases it is held that where one joint maker pays all the illegal interest he may sue therefore in a separate action without joining his co-maker as a co-plaintiff. But such cases, in our opinion, do not sustain the proposition that joint makers of a note may not maintain a joint suit for recovery of usury. Plainly one joint maker should not be allowed to recover that which he did not pay, since his co-maker, not being a party to the action, might also sue and thus force defendant to pay twice for the same usury. In the present case, all parties to the note are in court and defendant cannot be prejudiced by a joint judgment. One determination of the usury paid has been made, and one judgment entered. Defendant will be compelled to pay that judgment and no more.

The case most nearly in point, relied upon by appellees and conceded by appellant to be contrary to his contention, is that of Alston et al. v. Orr, Tex.Civ.App., 105 S. W. 234, 236. In that case, three brothers applied for a loan which defendant agreed to make, provided their father would sign the note with them. The father and sons signed a joint and several note but the father received no money and made no payments on the note and the illegal interest was paid by the three sons at different times and in different amounts. The father and sons joined in an action to recover double the amount of the illegal interest as provided by the Texas statute. The trial court ruled that there was a variance between the allegations and proof but this ruling was reversed on appeal, where the court said:

"We conclude from the foregoing that all of the appellants were necessary parties to this suit, and must join in this action. * * * Under the allegations in the petition, it was competent to show the payments by any or all of the plaintiffs. It was not alleged that each of the plaintiffs paid any certain amount, but the allegation was general that the plaintiffs made the following payments, setting them out. We think this allegation could have been met by proof that the payment on any particular day had been made by one of the plaintiffs acting for all, or by any two or more of them. Their obligation being joint, any payment made by either would enure to the benefit of all. 4 Am. & Eng.Ency.Law. (2d Ed.) p. 497, and authorities cited.

"The alleged agreement of plaintiffs among themselves, above set out, as to the division and use of the money among three of them, and that each of said three should pay the stipulated interest on the amount each used, and should pay back to Orr that proportion of the principal, could not alter the nature of the written instrument, which imposed a joint obligation upon all of them. Nor did the separate payments by any one of them release him from his joint and several liability for the balance due. The note being joint and several, so far as the payee was concerned, he could hold all the makers jointly and severally liable for the full amount, regardless of the payments each one had made, and any agreement relative to the division of liability thereon by the appellants inter se could not affect the question. So that in our judgment it necessarily follows that any payment made by one of the plaintiffs inured to the benefit of all, and was in law a payment by all of them; and this was but the effect of the allegation in plaintiffs' petition and the proof fully conformed thereto, so that there was not, in our judgment, any variance. The judgment of the court instructing a verdict for the defendant on the ground of a variance was error, for which the judgment must be reversed."

We believe the reasoning of the above case applies to the instant case, particularly in view of the fact that the parties here, related by marriage or blood, executed a joint and several note, secured by a joint deed of trust on the two properties, the proceeds of the note were used by them under an apparent joint agreement and payments were made by the parties in varying amounts apparently pursuant to some joint arrangement between them.

All three makers of the note were jointly and severally liable for the full amount and payments made by one enured to the benefit of the other as far, at least, as the holder of the note was concerned. What private arrangement existed between the makers of the note as to the division of the proceeds of the note or the repayment

Adm'r, 3 Dana 183, 33 Ky. 183; Phillips v. Ogle et al., 21 D.C. 199; Berry v. Makepeace, 3 Ind. 154; Lamoille County National Bank v. Bingham, 50 Vt. 105, 28 Am.Rep. 490. See also Annotations in 82 A.L.R. 1008, and 134 A.L.R. 1335.

thereof does not appear; nor do we think it material as far as the lender is concerned. While Mrs. Jackson actually made no payments on the note, she was jointly and severally liable thereon, property owned by her and her husband was given as security for the payment of the loan and she was in all respects an essential party to the note. We conclude under these circumstances the three joint makers had the right to maintain a joint suit and to obtain a joint judgment for the usury admittedly paid, even though they could not show exactly what amount each had individually paid.

█ There remains the question of the one year limitation provided by the act. Appellant's position in this regard is that Mrs. Ware, upon the payment of $300, was finally released from all obligation under the note, and that as a consequence her claim is barred by the limitation of the act. As previously stated, when Mrs. Ware made the $300 payment in March, 1939, her property was released from the deed of trust. It does not necessarily follow, however, that she was released from further obligation under the note. There was no evidence that she made the payment in order to be released from personal liability or that Knott agreed that she would be released upon making the payment, or that he told her at any time that she was released. He gave her no writing to that effect and it is significant that, while the note bore an endorsement by the trustee that the Ware property was released from the deed of trust securing the note, there was no notation made upon the note of any release of personal liability of Mrs. Ware. The only evidence regarding a release of Mrs. Ware from further liability on the note is her testimony that when she paid the $300 she was "finished", and that thereafter she was asked for no further payments, and Dr. Knott's testimony that when the $300 payment was made he cancelled the signature of Mrs. Ware by drawing a line through it, but he did not testify that he did that in the presence of Mrs. Ware or that he did it for the purpose of releasing her from further liability. The original note, produced here under Rule 32(c), discloses an indistinct line drawn through Mrs. Ware's signature. Dr. Knott testified that he drew lines through the other two signatures when the note was finally paid, that he presumed all the lines were made with the same ink and the same pen and that he was using the same ink in 1941 that he used in 1939. Under these circumstances, we think it was proper for the trial court to submit to the jury the question, as hereinafter discussed, of whether or not Dr. Knott had actually released Mrs. Ware from further personal liability on the note at the time she made the $300 payment.

█ Again appellant asserts that since Mrs. Ware made no payments after March, 1939, she is barred by the one year limitation, regardless of whether she was released in 1939. The jury, by its verdict, has found that she was not released in 1939, and under the authority of Alston et al. v. Orr, supra, payments made by any of the parties were made on behalf of all, and under the authority of Brown v. Slocum, 30 App.D.C. 576, and Von Rosen v. Dean, 59 App.D.C. 359, 41 F.2d 982, the action to recover back usurious interest can only be maintained after the last payment on the debt has been made. The last payment in the instant case was made in December, 1941, and consequently the suit was brought within the time limited by the statute.

█ The trial court ruling, as a matter of law, that the transaction was usurious, submitted to the jury two questions only, namely, whether Mrs. Ware was in fact released from her obligation of making the $300 payment, and whether the $50 payment to Miller was a proper charge against the borrowers. By its verdict the jury found that she was not released and that the charge was proper. We think these two questions were properly submitted to the jury. The evidence as to what transpired at the time of the making of the $300 payment was neither positive nor direct. From such evidence the jury might have found, as evidently it did, that the purpose of the $300 payment was to obtain a release of Mrs. Ware's property from the deed of trust and not to obtain a release from further personal obligation on the note. As to the $50 charge, Miller testified that it was a payment to him for handling the transaction, including the preparation of the note and deed of trust and recording charges, and the record states that on cross-examination he itemized the figures making up that amount. As far as the record discloses, these charges were not excessive nor made as a cloak for usury, and the jury, by its verdict, found this to be a proper charge against the plaintiffs.

We find no error in the record and accordingly in both the appeal and cross-appeal the judgment below is affirmed.

Affirmed.

RICHARDSON, Chief Judge:

I agree with the foregoing opinion except as to the construction of that part of the Code, Section 28—2704,[1] requiring that when usury is paid "suit be begun within one year from the date of such payment".

The transaction was usurious because at the time of the loan the lender deducted a discount or commission of $232.19, taking a note for $980.00 for the loan of $747.90.

All payments on account of the note, whether credited by the holder as principal or interest, are required to be applied to the repayment of the actual indebtedness.[2] The payment of $300.00 by the appellee Ware on March 24, 1939 (the suit was filed April 15, 1942) discharged the original debt and included $27.00 of usurious interest. At that time a cause of action to recover usury accrued under the statute.

Subsequently, at various times during the remainder of 1939, 1940 and 1941, payments were made by the appellee Jackson. These payments were of usury, but only two (that of $15.00 on July 3, 1941 and $47.56 on December 4, 1941) were made within the one year period. I think the recovery should have been limited to these two payments. I am aware that this conclusion may seem at variance with the language of the opinion in Brown v. Slocum, 30 App.D.C. 576, 577, decided March 10, 1908. The following considerations, however, impel me to this decision.

In Brown v. Slocum the question now before us was not involved. In that case a note of $183.60 was executed October 31, 1905 payable in twelve equal monthly installments of $15.30 beginning January 4, 1906. $48.60 was deducted as a commission. The borrower received $135.00. The opinion states:

"the sum deducted was usurious under the law, but, inasmuch as it was paid more than one year before suit for its recovery was begun, appellant insists that recovery is barred by the statute of limitations."

When the suit was filed on February 20, 1907, ten of the twelve payments had been made within the year. The two prior payments had repaid $30.60 of the amount loaned. It was not until nine payments had been made, or until September 4, 1906, that the sum actually loaned was repaid. All usurious payments were made less than six months before suit.

The court relied upon and quoted a portion of the opinion by Justice Harlan in McBroom v. Scottish Mortg. & Land Inv. Co., 153 U.S. 318, 328, 14 S.Ct. 852, 856, 38 L.Ed. 729, 733, in which a 10% deduction from the amount of a loan had been applied as a commission when the loan was granted. In that case the principal note was payable in one payment in six years and had not matured when the action was brought. The quotation from this opinion was in part as follows:

"Interest cannot be said to have been collected or received in excess of what may be lawfully collected and received until the lender has, in fact after giving credit for all payments, collected or received more than the sum loaned, with legal interest. Such, in our judgment, is the true construction of the statute of New Mexico. In this view, the limitation of three years, within which the borrower may sue for double the amount of usurious interest collected and received from him, does not commence to run, and, therefore, the cause of action does not accrue, until the lender has actually collected or received more than the original debt, with legal interest."

Applying this rule in Brown v. Slocum, the court held that all payments made upon a note tainted with usury must be applied on the actual amount loaned until it is paid in full.

The further statement by the court: "We think her cause of action did not accrue until the last payment was made,"

1 "If any person or corporation in the District shall directly or indirectly take or receive any greater amount of interest than is herein declared to be lawful, whether in advance or not, the person or corporation paying the same shall be entitled to sue for and recover the amount of the unlawful interest so paid from the person or corporation receiving the same, provided said suit be begun within one year from the date of such payment." (March 3, 1901, 31 Stat. 1377), Code of 1940, § 28—2704.

2 Brown v. Slocum, 30 App.D.C. 576, 577; Von Rosen v. Dean, 59 App.D.C. 359, 41 F.2d 982; McBroom v. Scottish Mortg. & Land Inv. Co., 153 U.S. 318, 328, 14 S.Ct. 852, 38 L.Ed. 729, 733.

was not only immaterial to the decision of the case but was apparently inadvertent.

If the appellee had refused to make the last payment on her note it is unthinkable that she would not have had a cause of action on account of her prior payments of usury. The court did not so intend. This was obvious when it said:

"There could be no usurious interest collected until the appellee had paid the full amount she received, together with legal interest. This time did not occur until within less than a year of the bringing of this suit."

Later in Von Rosen v. Dean, 59 App. D.C. 359, 41 F.2d 982, 983, the court paraphrased its language in Brown v. Slocum, supra, but added, after the words "the last payment was made" the qualifying clause "on the debt on which usury was charged."

What was "the debt on which usury was charged"? I think the Supreme Court answered that question in the quotation repeated in Brown v. Slocum when it said:

"The cause of action does not accrue, until the lender has actually collected or received more than the original debt."

That limitations of action commence to run from the accrual of the cause of action is a rule of universal application and I can discover nothing in the statute or in reason to justify departure from a settled principle of law.

In McCarthy v. First National Bank, 233 U.S. 493, 32 S.Ct. 240, 241, 56 L.Ed. 523 (affirming 23 S.D. 269, 121 N.W. 853, 23 L.R.A.,N.S., 335, 21 Ann.Cas. 437) decided February 19, 1912, four years after Brown v. Slocum, it was held that the two year limitation imposed on suits for usury against national banks by Sec. 5198, R.S.U. S., 12 U.S.C.A. § 86. included only interest paid within two years prior to suit if paid and received as such. The court said that "the statute does not begin to run from the date of the loan, nor from the date of the satisfaction of the debt, but from the date interest is paid". The note in that case had extended over a long period of years, during which usurious interest had been paid. The principal had been paid less than two years before suit. The defense was that payments of usury antedating the two years were barred by the statute. This was so ruled by the state court. In affirming, the Supreme Court said in part:

"In considering the bank's plea that the action was barred because not brought within two years, and the plaintiff's claim that the statute only ran from the date the debt was paid, the supreme court of South Dakota pointed out the irreconcilable conflict in the cases dealing with this question, and after making careful analysis of all the authorities, reached the conclusion, in which we concur, that the statute begins to run from the date of the payment of the usurious interest.

\* \* \* \* \*

"But when the debtor actually makes a payment as interest and the bank knowingly receives and appropriates it as such, the usurious transaction is complete, the right of the one and the liability of the other is fixed, the cause of action arises, and the statute of limitations begins to run. There is no locus penitentiae. That privilege is only granted to those banks which, having charged usury, may by a refusal to accept interest when tendered, show that they will not carry the illegal contract into execution, and thus escape the twofold penalty.

"Those courts which hold that the statute begins to run from the payment of the debt, instead of the payment of the interest, have been influenced by statements of Mr. Justice Harlan in McBroom v. Scottish Mortg. & Land Inv. Co., 153 U.S. 318, 14 S.Ct. 852, 38 L.Ed. 729, which involved the construction of the usury statute of the territory of New Mexico. That act differed in several respects from Rev.Stat. § 5198. But that case did not rule that in a suit under the act of Congress, the statute did not run from the date usury was paid and received as such. This court did not understand that such was the meaning of that case, as appears from his opinion in Brown v. Marion Nat. Bank, 169 U.S. 416, 18 S.Ct. 390, 42 L.Ed. 801, which involved a construction. Rev.Stat. § 5198. For he there points out the difference between 'paying' and 'agreeing to pay,' and says that, 'if at any time the obligee actually pays usurious interest, as such the usurious transaction must be held to have then, and not before, occurred, and he must sue within two years thereafter.'

"The Supreme Court of South Dakota properly held that the recovery of interest paid more than two years before suit was brought was barred, and its judgment is affirmed."

Two points are clear from this decision. First, that payments of usurious interest do

not constitute a running account to justify inclusion of barred payments upon the theory that the limitation commences to run from the date of the last payment. Second, that an immediate cause of action accrues for each definitely usurious payment.

In Baker v. Moultrie Banking Company, 53 Ga.App. 107, 184 S.E. 894, 896, the court said:

"A suit to recover usury must be brought within twelve months from the payment thereof. * * * The date when paid and the amount must be shown. Each act of usury gives rise to a separate cause of action. Different acts may be included in one suit, under the Code § 3-113, which allows claims between the same parties to be joined in the same action. A running account is not barred if the last item is not barred. The present suit is not for an accounting, but is for separate acts of usury." (Italics supplied.)

In the present case there is no mutuality or reciprocity of credits and debits which would constitute a running account. Usury was paid by the appellees, but a part of it was paid more than one year before the suit was brought. I think the recovery should have been limited to the amounts paid within the year.